CHICAGO BRIDGE AND IRON, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Danny Reed, Appellee).

Fifth District (Industrial Commission Division)   No. 5—92—0309WC

Opinion filed July 2, 1993.—Rehearing denied September 8, 1993.

Stephen Masters & Associates, of Joliet, for appellant.

James H. Cooksey and David M. Foreman, both of Crain, Cooksey, Veltman & Miller, Ltd., of Centralia, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employee, Danny Reed (claimant), filed an application for adjustment of claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) against Chicago Bridge and Iron, Inc. (employer), alleging that he sustained work-related injuries shortly before his arrival at an out-of-State work site. Following a hearing, the arbitrator denied claimant's application for benefits, finding he failed to prove that Illinois had statutory jurisdiction, that an employer-employee relationship existed at the time of the accident, or that his accident arose out of and in the course of employment. The Industrial Commission (Commission) reversed the arbitrator's decision, and the circuit court confirmed the determination of the Commission. The employer appeals raising the following issues: (1) whether the Commission's determination that there was a statutory basis for Illinois jurisdiction of this occurrence was error; (2) whether an employer-employee relationship existed at the time of the claimant's accident; and (3) whether the Commission's determination that claimant's accident arose out of and in the course of employment was against the manifest weight of the evidence.

The claimant, an itinerant boilermaker-welder, began working for the employer in 1968. He was first hired by Thornton Cooper, a foreman for the employer. The transaction took place in Sandoval, Illinois, but the jobsite was in Zion, Indiana. The claimant continued to work exclusively for the employer and was periodically required to travel to

work sites located in other States. When each job began, the claimant was placed on the payroll, and he filled out the required tax forms. When the job was completed, the claimant was terminated from the payroll. The employer was under no obligation to notify the claimant when work was available, nor was the claimant under any obligation to accept the job offered. The claimant's last job prior to the one at issue was in Louisville, Kentucky, and was completed in February 1987.

Madonna Schweigert, the employer's field personnel manager, testified that she contacted the claimant by telephone on or about April 24, 1987, and asked him if he was available to work at a jobsite in Pine Bend, Minnesota. Schweigert told claimant the wage rate for the job and that he would be compensated for travel to the jobsite at the rate of 30 cents per mile. The claimant agreed to go to the jobsite, and she gave him directions to the job once he reached Pine Bend.

On April 26, 1987, the claimant drove to Pine Bend. He arrived at around 7 p.m., located the jobsite, and spent the night at a motel. He was scheduled to report to the jobsite at 7 a.m. the next morning. At around 5:30 a.m. that morning, the claimant started driving toward the jobsite. When he was 200 yards from the employer's parking lot and waiting to cross the last two lanes of a four-lane highway, the claimant's truck was hit by another vehicle, and he was injured. At the time of the accident, the claimant was carrying in his truck several items of equipment belonging to the employer such as a hard hat, safety glasses, welding hood, lanyard safety belt, slag hammer, and hand wrench.

The claimant is a member of the National Transient Division of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers, and Helpers. In the preamble of the agreement are several statements referring to the transitory nature of the work performed by the contractors and that the short duration of most jobs forces the workers to live a migratory life. The agreement also contemplates that employment begins and ends at the jobsite and that when a job ends the foreman authorizes the worker to report to a new job for rehire or, if no additional work is available, he is terminated from the payroll. Furthermore, if a worker reports for work and none is available, he will be paid the equivalent of four hours of work. In addition, when authorized to travel to the next work site, the worker will be paid a travel allowance at the rate of 30 cents per mile. However, the employee does not qualify for a travel allowance unless he works for the employer a minimum number of days.

■ In all of the issues raised, the employer relies on the argument that the union contract is the determining factor as to whether the claimant is entitled to compensation under the Act. Relying on *Lingle v. Norge Division of Magic Chef, Inc.* (1988), 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877, the employer first claims that the application of State law to the claim at issue is preempted by Federal law because its resolution involves an interpretation of the collective-bargaining agreement. In *Lingle*, the Court held that where the "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law *** is pre-empted and federal labor-law principles *** must be employed to resolve the dispute." (*Lingle*, 486 U.S. at 405-06, 100 L. Ed. 2d at 418-19, 108 S. Ct. at 1881.) The State-law claim in *Lingle* was a claim for retaliatory discharge under Illinois law. The Court held that the claim was not preempted by section 301 of the Labor Management Relations Act (29 U.S.C. §185(a) (1982)) because the factual inquiries as to whether the employee was discharged for exercising his rights under the Act and whether the employer had a nonretaliatory reason for discharge do not turn on the meaning of any provision of the collective-bargaining agreement. Although "the state-law analysis might well involve attention to the same factual considerations as the contractual determination ***[,] such parallelism [does not] render[ ] the state-law analysis dependent upon the contractual analysis." *Lingle*, 486 U.S. at 408, 100 L. Ed. 2d at 420, 108 S. Ct. at 1883.

The Illinois Supreme Court dealt with a similar issue in *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308. Quoting the Supreme Court in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 212, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912, the *Gonzalez* court addressed the fact:

" 'In extending the pre-emptive effect of section 301 beyond suits for breach of contract, *it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct or establish rights and obligations, independent of a labor contract.*' " (Emphasis in original.) (*Gonzalez*, 115 Ill. 2d at 7-8.)

The *Gonzalez* court stated that neither the employer nor the union could strip an employee of the protection of Illinois law by restating the rights and obligations that arise in a private labor agreement. (*Gonzalez*, 115 Ill. 2d at 12.) Additionally, section 301 does not accord the substantive provisions of a private labor agreement the supremacy of Federal law. *Gonzalez*, 115 Ill. 2d at 12, citing *Allis-Chalmers Corp.*, 471 U.S. at 212, 85 L. Ed. 2d at 216, 105 S. Ct. at 1911-12.

■ In its discussion of whether Federal law preempted a State tort claim, the supreme court in *Ryherd v. General Cable Co.* stated that "where the tort claim rests on breach of a duty which would not exist in the absence of the collective-bargaining agreement [citation], the tort claim is pre-empted." (*Ryherd v. General Cable Co.* (1988), 124 Ill. 2d 418, 425-26, 530 N.E.2d 431.) According to the court, a State claim is preempted "if the employee could not bring the claim 'but for' the collective-bargaining agreement," and "[c]onversely, section 301 does not preempt 'state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.' " (*Ryherd*, 124 Ill. 2d at 426, quoting *Allis-Chalmers Corp.*, 471 U.S. at 212, 85 L. Ed. 2d at 216, 105 S. Ct. at 1912.) Applying the above law to the case *sub judice*, we conclude that the union contract was a private labor agreement which did not have the supremacy of Federal law, and it did not preempt any rights the claimant might have under the Act. See *Gonzalez*, 115 Ill. 2d at 12.

■ The employer next contends that the Commission was without jurisdiction because neither the employment contract nor the work to be performed occurred within the State of Illinois. The employer finds support for this position in the fact that the accident occurred before the claimant arrived at the work site and that, according to the language of the contract, employment would not begin until he did. We disagree.

At the arbitration hearing both the claimant and Schweigert testified that Schweigert contacted the claimant by telephone in Illinois, offered him the job in Pine Bend, Minnesota, and told him when it was scheduled to begin, the rate of pay, and that claimant would be paid 30 cents a mile to travel to the jobsite. She further testified that the claimant accepted the job and agreed to travel to the Pine Bend location.

Illinois has jurisdiction over claims under the Act "including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois." (Ill. Rev. Stat. 1987, ch. 48, par. 138.1(b)(2); *F & E Erection Co. v. Industrial Comm'n* (1987), 162 Ill. App. 3d 156, 168, 514 N.E.2d 1147.) A contract is made where the last act necessary to give it validity occurs. (*F & E Erection Co.*, 162 Ill. App. 3d at 168.) Whether a contract of hire was made in Illinois is a question of fact for the Commission to determine. *United Airlines, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 126, 131-32, 449 N.E.2d 119; *F & E Erection Co.*, 162 Ill. App. 3d at 168.

In the case *sub judice*, the testimony of the claimant and Schweigert that a job offer was made and accepted in Illinois was sufficient to support the Commission's determination that a contract of hire took place in Illinois. This finding is not altered by the fact that the contract was to be performed in a different State at a later time, the Commission's determination was not against the manifest weight of the evidence, and this provided a basis for Illinois jurisdiction.

■ The employer next contends that the claimant failed to prove the existence of an employer-employee relationship at the time of the accident. While this issue was somewhat intertwined with that of jurisdiction, we will address it separately.

Central to the employer's argument is the language of the union agreement which provides that employment begins and ends at the jobsite. According to the employer, because the claimant's previous job with the employer had terminated in Louisville, Kentucky, in February 1987 and because the accident occurred before the claimant reached (albeit by only 200 yards) the Pine Bend site, the claimant was not an employee at the time of the injury. The employer argues that the union contract is the dispositive factor under Illinois contract law, based on the principle that public policy strongly favors the freedom to contract and that voluntary agreements should be honored unless contrary to such policy. (See *Roanoke Agency, Inc. v. Edgar* (1984), 101 Ill. 2d 315, 461 N.E.2d 1365; *Schniederjon v. Krupa* (1985), 130 Ill. App. 3d 656, 474 N.E.2d 805.) While we agree that the language of the contract cannot be ignored, we do not agree with the employer's contention that it is dispositive. In *Wenholdt v. Industrial Comm'n* (1983), 95 Ill. 2d 76, 80, 447 N.E.2d 404, the court held that a contractual agreement is one factor to consider in determining a party's status, but it is not the only consideration. Furthermore, the label given by the parties to a written agreement does not control a claimant's employment status. Rather, all of the facts of the case must be taken into consideration. *Earley v. Industrial Comm'n* (1990), 197 Ill. App. 3d 309, 317, 553 N.E.2d 1112.

In this case, other considerations include the fact that, in our discussion of jurisdiction, we concluded that a contract of employment had been entered into. While we do not equate this fact with saying that an employee-employer relationship existed, it was nevertheless a factor. We note the employer's argument that the claimant was not hired during his telephone conversation with Schweigert because, until he was placed on the payroll, the employer was free to withdraw the job offer and the claimant was free to reject it. However, this would be true at any time either before or during the claimant's em-

ployment and, consequently, cannot be used as a basis for rejecting the Commission's determination that the claimant was hired in Illinois. In addition, the claimant worked ıegularly for the employer for 19 years. During this period he did not work for anyone else, and the scenario which resulted in his arrival in Pine Bend, Minnesota, on April 26, 1987, was the same scenario which resulted in his arrival at other work locations over the past 19 years.

Whether an employer-employee relationship exists is generally a fact question, and a determination must be made on a case-by-case basis after reviewing all of the relevant factors. As such, we cannot say that the Commission's determination that an employer-employee relationship existed at the time of the claimant's injury was against the manifest weight of the evidence.

A different result may have been obtained if the claimant had never worked for the employer prior to the Illinois telephone conversation or if he had regularly worked for others during the 19-year period. In sum, while the facts of this case may support an opposite conclusion, we cannot say that such a conclusion is clearly apparent.

■■ The employer's final contention is that the Commission's determination that the claimant's accident arose out of and in the course of employment was against the manifest weight of the evidence. Generally, an accident which occurs while an employee is traveling to or from work is not considered one that arises out of or in the course of employment. (*Hall v. DeFalco* (1988), 178 Ill. App. 3d 408, 413, 533 N.E.2d 448.) However, there are several exceptions to the general rule which the claimant asserts are applicable to his claim. An employee will be considered in the course of employment while traveling to or from work if the course or method of travel is determined by the demands or exigencies of the job rather than by his own personal preference as to where he chooses to live. (*Lopez v. Galeener* (1975), 34 Ill. App. 3d 815, 819, 341 N.E.2d 59.) Another exception occurs where the employer agrees to compensate the employee for time spent traveling to or from work, but the exception is not applicable where the employee is only reimbursed for the expense of travel. *Commonwealth Edison Co. v. Industrial Comm'n* (1981), 86 Ill. 2d 534, 539, 428 N.E.2d 165.

We agree with the employer that neither of these exceptions is applicable to the case *sub judice* where, even though the claimant was given directions to the work site, he was free to use any route he chose to reach his destination. Additionally, the compensation received by the claimant for his travel to the jobsite was reimbursement for travel expenses as opposed to payment for the time spent traveling.

The other exception to the general rule, which was addressed by the arbitrator and the Commission, is that of the traveling employee. The traveling employee is described in *Wright v. Industrial Comm'n* (1975), 62 Ill. 2d 65, 68-69, 338 N.E.2d 379, as one who is required to travel away from the employer's premises in order to perform his job. The key factor of this exception is the reasonableness and foreseeability of the activity the employee was performing when he was injured. *Wright*, 62 Ill. 2d at 69-70.

The arbitrator concluded that if the claimant had arrived at the jobsite and his employment commenced before the accident occurred, this exception would have been applicable. However, the Commission concluded that the claimant's employment began in Illinois when he was hired and that he was a traveling employee engaged in reasonable and foreseeable conduct traveling in a direct route from the motel to the jobsite at the time of his accident. While the employer cites to many cases, none are on point with the facts of this case.

At oral argument both parties seemed to agree that had the claimant never worked for the employer prior to receiving the call from Schweigert, he would not be a traveling employee. We agree. Conversely, if the claimant had not been terminated from the payroll after each job, we would have little difficulty characterizing him as a traveling employee.

While the facts *sub judice* are different than either of the above, we judge them closer to the latter. Given claimant's long-standing (19 years) and exclusive employment with the employer, and considering that the purpose of the Act is to provide financial protection for injured workers through prompt and equitable compensation (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 529, 505 N.E.2d 1026; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 180-81, 384 N.E.2d 353), we do not believe that the finding of the Commission that the claimant was a traveling employee was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court confirming the determination of the Commission is affirmed.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and RARICK, JJ., concur.