[No. 41714-2-I. Division One. April 20, 1998.]

JOSEPH ROBERT SHELTON, *Plaintiff*, v. AZAR, INC., ET AL., *Respondents*, CHARLES REED, *Petitioner*.

---

924

*Karen K. Greig*, for petitioner.

*Daniel P. Mallove* of *Cozen and O'Connor*, for plaintiff.

*Michaelanne Ehrenberg* of *Stafford Frey Cooper*, for respondents.

PER CURIAM — The third party plaintiffs in this case, respondents Azar, Inc., and Marion Wiley, concede that Charles Reed, after flying from California to Washington for his job, was driving a rental car to his hotel when the car collided with the respondents' taxicab. A worker traveling at his employer's request generally is acting within the course of his employment when going to his hotel. Because workers acting in the course of their employment are immune from liability to their co-workers, a third party may not sue an immune employee for contribution or indemnification if the third party's only injury flows from the employee's negligent act toward his co-worker. Thus, because respondents' only claim against Reed in their amended complaint was based on his negligent act toward his co-worker, the amendment was futile. The trial court, therefore, erred when it granted respondents' motion to amend their complaint and denied Reed's motion for reconsideration.

Reed and Joseph Shelton worked together at Integrated Systems Analysts, Inc. (ISA) in San Diego, California. When ISA assigned them to work at the Bremerton shipyard, they flew from San Diego to Seattle, rented a car, and were driving to a hotel when their car collided with a Yellow Cab driven by Marion Wiley.

Shelton was injured and received workers' compensation benefits. He then sued Wiley and Yellow Cab (respondents). Respondents then filed a third party suit against Reed, alleging that Wiley suffered personal injuries as a result of Reed's negligence. But Wiley admitted in an answer to an interrogatory that he was not physically injured in the accident. Rather, his only damage was that he had to "deal with the emotional stress and strain concomitant with being named as a defendant in a lawsuit and having to defend myself and the disruption to my life."

Based on Wiley's admission, Reed moved for summary judgment of dismissal. Respondents then moved to amend their third party complaint to allege that Reed's negligence caused the accident and, therefore, he was responsible for all or part of Shelton's damages. Reed objected, arguing that he is immune from suit by his co-worker, either directly or by contribution through a third party complaint. The trial court granted the motion to amend and denied Reed's motion for reconsideration. Reed seeks discretionary review of those orders.

Under RAP 2.3(b), this court may grant interlocutory review only:

(1) If the superior court has committed an obvious error which would render further proceedings useless; or

(2) If the superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act; or

(3) If the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court.

A commissioner referred this case to the judges' motion calendar after concluding that Reed may have raised a substantial issue meriting immediate review. We hereby accept discretionary review, accelerate review, and reverse the trial court.

## The Trial Court Erred

Reed contends that the trial court erred when it granted respondents' motion to amend its third party complaint because the amended complaint sought relief that is expressly barred by statute and because the Industrial Insurance Act abolished the court's jurisdiction over workplace injuries caused by an employer's or co-worker's negligence. We agree.

■■ ■ Generally, courts are to freely allow parties to amend their pleadings: "leave shall be freely given when justice so requires,"[1] unless prejudice to the opposing party would result.[2] But a trial court may also consider whether pursuit of the new claim would be futile.[3] A decision to grant or deny a motion to amend is reviewed for an abuse of discretion.[4] Because respondents concede that Reed was going to his hotel after traveling to Washington at his employer's direction, we conclude he was acting in the course of his employment and, hence, was immune from liability to Shelton. The amendment of respondents' complaint, therefore, was futile. The trial court abused its discretion when it granted the motion to amend.

## Respondents' Amendment Was Futile

Washington's Industrial Insurance Act abolished civil actions by employees against their employers:

> The common law system governing the remedy of workers against employers for injuries received in employment is inconsistent with modern industrial conditions. . . . The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state

---

[1] CR 15(a).

[2] *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987).

[3] *See Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 142, 937 P.2d 154, *amended*, 943 P.2d 1358 (1997), *cert. denied*, 118 S. Ct. 856 (1998).

[4] *Ino Ino*, 132 Wn.2d at 142.

over such causes are hereby abolished, except as in this title provided.[5]

But there are exceptions to the rule that employees may not pursue civil actions for injuries sustained in the course of employment. For example, a worker may elect to sue a third party who is responsible for the worker's injuries:

> If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person.[6]

This exception, by inference, precludes civil actions against co-workers.[7] Thus, Shelton could not sue Reed directly.

■ Nevertheless, respondents contend that nothing in Title 51 expressly prohibits a nonemployer/employee third party from seeking compensation from a negligent co-worker. We would agree if respondents claimed they were injured when Reed breached a duty he owed them.[8] But their claim is that they are entitled to compensation based on the damages caused to Shelton in whole or in part by Reed's negligence. In other words, they were asking for indemnification or contribution for Shelton's damages. Because their only claim flows from Reed's negligence toward Shelton, Title 51 prohibits them from suing Reed.[9]

---

[5]RCW 51.04.010.

[6]RCW 51.24.030(1).

[7]*Wilson v. Boots*, 57 Wn. App. 734, 736, 790 P.2d 192, *review denied*, 115 Wn.2d 1015 (1990).

[8]*See Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 242-43, 588 P.2d 1308 (1978).

[9]*Seattle-First*, 91 Wn.2d at 243; *Montoya v. Greenway Aluminum Co.*, 10 Wn. App. 630, 519 P.2d 22 (1974). *Seattle-First* and *Montoya* involved third-parties' attempts to sue employers, not co-workers. Respondents argue, therefore, that they are not controlling. But co-workers, like employers, are immune from liability under Title 51, and respondents do not explain why employers are immune from liability for third-party contribution or indemnification claims, while co-workers are not. The only assertion respondents make that arguably distinguishes co-

■ But relying upon *Clark v. Pacificorp*,[10] respondents argue that the immunity granted under Title 51 is limited by RCW 4.22.070. In *Clark*, the court held that RCW 4.22.070(1) required the trier of fact to attribute fault to every entity that caused the claimant's damages.[11] When *Clark* was decided, RCW 4.22.070 read as follows:

> "In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages, including the claimant . . . third-party defendants . . . [and] entities immune from liability."[12]

After *Clark* was decided, the statute was amended. It now specifically prohibits the trier of fact from determining the fault of entities that are immune from liability under Title 51:

> In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW. . . . The entities whose fault shall be determined include the claimant or person suffering personal injury or property damage, . . . but shall not include those entities immune from liability to the claimant under Title 51 RCW.[13]

Respondents argue that *Clark* remains good law, despite the amendment of the statute. We disagree. As the Supreme Court noted in *Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*,[14] RCW 4.22.070 was amended in response to *Clark* to specifically exclude employers with immunity under Title 51 as entities that fault could be assessed against.

---

workers from employers is that co-workers do not pay industrial insurance premiums.

[10]*Clark v. Pacificorp*, 118 Wn.2d 167, 822 P.2d 162 (1991).

[11]*Id.* at 181.

[12]*Id.* at 175 n.4, quoting former RCW 4.22.070(1).

[13]RCW 4.22.070(1).

[14]*Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 128 Wn.2d 745, 759 n.7, 912 P.2d 472 (1996).

Nevertheless, respondents argue that the amendment of their complaint was proper because the recent case of *Edgar v. City of Tacoma*[15] specifically allows evidence of an immune employer's fault to be admitted where the employer or employee's negligence proximately caused the accident. But while the *Edgar* court recognized that evidence of an employer's fault may, in some cases, be relevant, the Court agreed with its conclusion in *Moen* that "the 1993 amendments to the contributory fault system removed immune employers from the list of entities to whom fault may be assigned."[16]

> The intent and effect of the 1993 amendments are to create a tort system under which the plaintiff's recovery, the right of the Department of Labor & Industries to reimbursement, and the third-party defendant's liability are not reduced by the extent to which the plaintiff's damages were also proximately caused by the fault of the plaintiff's immune employer.[17]

Thus, while evidence of an employer's or co-worker's fault may in some cases be relevant, the trier of fact may not assign fault to those immune entities. *Edgar*, therefore, supports a conclusion that the new claim respondents asserted would be futile and, therefore, that the motion to amend should have been denied, unless Reed was not acting in the course of his employment when the accident occurred.[18]

### Reed Was Acting In The Course Of His Employment

Respondents contend in their briefs[19] that discovery is continuing on the issue whether Reed was acting outside

---

[15]*Edgar v. City of Tacoma*, 129 Wn.2d 621, 919 P.2d 1236 (1996).

[16]*Id.* at 624.

[17]*Id.* at 632.

[18]*Evans v. Thompson*, 124 Wn.2d 435, 444, 879 P.2d 938 (1994) (coemployee is immune only if he was acting in the course of his employment).

[19]Respondents filed an answer and supplemental answer to Reed's motion for discretionary review. Reed moved to strike their supplemental answer, but rather than granting that motion, the commissioner allowed Reed to file a supplemental reply.

the course and scope of his employment when the accident occurred. But during argument before the commissioner they conceded that Reed and Shelton were on their way to their hotel after flying from San Diego to Seattle at their employer's request. Nevertheless, they contend that even if Reed was on his way to a hotel from the airport, as he claimed, he was not acting within the course of employment under the Industrial Insurance Act.

Washington's Industrial Insurance Act provides benefits for injuries that occurred in the course of employment.[20] Injuries incurred while going to or from work generally are not covered:[21]

> "Acting in the course of employment" means the worker acting at his or her employer's direction or in the furtherance of his or her employer's business *which shall include time spent going to and from work on the jobsite,* as defined in RCW 51.32.015 and RCW 51.36.040,[22] *insofar as such time is immediate to the actual time that the worker is engaged in the work process in areas controlled by his or her employer, except parking area.* It is not necessary that at the time an injury is sustained by a worker he or she is doing the work on which his or her compensation is based or that the event is within the time limits on which industrial insurance or medical aid premiums or assessments are paid.[23]

Respondents contend that Reed was not acting within the course of his employment because (1) he had arrived from California to work in Washington for two months, so Washington was his home, and traveling to and from home does not constitute acting in the course of employment; (2) the time he spent coming from California was not "immediate to the actual time that the worker [was] engaged in the work process in areas controlled by his or her em-

---

[20]RCW 51.12.010.

[21]*Belnap v. Boeing Co.*, 64 Wn. App. 212, 221, 823 P.2d 528 (1992).

[22]RCW 51.32.015 and RCW 51.36.040 define jobsites as premises "occupied, used or contracted for by the employer for the business [of/or] work process in which the employer is then engaged."

[23]RCW 51.08.013(1) (emphasis added).

ployer;"[24] and (3) he was on his way to a hotel, not the jobsite.

■■ When employees are required by their employers to travel to distant jobsites, courts generally hold that they are within the course of their employment throughout the trip, unless they are pursuing a distinctly personal activity:[25]

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdiction[s] to be within the course of their employment continuously during the trip, except when a distinct department [sic] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.[26]

One rationale for the rule is that employees on business trips for their employers must eat and sleep in various places to further the employers' business.[27] Another rationale is that the time and trouble of the journey, or the special inconvenience or hazard of making it, may be so significant that the journey must be considered integral to the service itself.[28]

Although no Washington cases were found that are directly on point, the reasoning in Washington cases is consistent with this "traveling employee" rule. An employee is considered to be acting in the course of employment if he is " 'engaged in the performance of the duties required of

---

[24]RCW 51.08.013(1).

[25]*Eversman v. Concrete Cutting & Breaking*, 224 Mich. App. 221, 568 N.W.2d 387, 389 (1997); *Cauble v. Soft-Play, Inc.*, 124 N.C. App. 526, 477 S.E.2d 678, 679 (1996), *review denied*, 345 N.C. 751 (1997); *Devine v. Advanced Power Control, Inc.*, 663 A.2d 1205, 1211 (Del. 1995); *Roadway Express, Inc. v. Workmen's Compensation Appeal Bd. (Seeley)*, 110 Pa. Commw. 619, 532 A.2d 1257, 1260 (1987); *Merritt v. Smith*, 269 S.C. 301, 237 S.E.2d 366, 369 (1977).

[26]Arthur Larson, Law of Workmen's Compensation § 25 (1990).

[27]*Cauble*, 477 S.E.2d at 679.

[28]*Devine*, 663 A.2d at 1211. Washington has adopted the "special errand" exception to the "going and coming" rule. *See Lang v. Department of Labor & Indus.*, 35 Wn. App. 259, 262, 665 P.2d 1386, *review denied*, 100 Wn.2d 1021 (1983).

him by his contract of employment, or by specific direction of his employer; or . . . was engaged at the time in the furtherance of the employer's interest.' ''[29]

Using that definition, a traveling employee was found to be acting in the course of his employment in *Hilding v. Department of Labor & Industries.*[30] The employee was directed by his employer in Asotin, Washington to travel to Spokane. The most direct route crossed into Idaho, then back into Washington. Hilding was killed in Idaho on the return trip. The main issue on appeal was whether the Workmen's Compensation Act covered injuries that occurred out-of-state. After concluding that it did, the court considered whether Hilding was killed while acting within the course of his employment, and concluded he was:

> The deceased, Hilding, went to Spokane at the direction of his employer, performed the duties required of him, started on his return to Asotin, and the accident occurred while in the state of Idaho. . . . At the time the accident occurred, Hilding was acting in furtherance of his employer's business, and hence was in the course of his employment.[31]

Similarly, in *Burris v. General Ins. Co.,*[32] the court reversed a summary judgment order that dismissed a claim for coverage brought by a seasonal worker who was on his way to a jobsite. In *Burris*, Pacific Coast Nursery hired high school students to work as weeders. The students reported to the company's "plant," then were assigned to work nearby or at a site 25 miles away. Burris worked one day near the plant and the next day was assigned to the distant site. The company did not have enough vehicles to transport all the workers, so Burris and others rode together in a privately owned truck. He was injured in transit.

[29]*Department of Labor & Indus. v. Johnson,* 84 Wn. App. 275, 278, 928 P.2d 1138 (1996), *review denied,* 131 Wn.2d 1025 (1997), *quoting Lunz v. Department of Labor & Indus.,* 50 Wn.2d 273, 278, 310 P.2d 880 (1957).

[30]*Hilding v. Department of Labor & Indus.,* 162 Wash. 168, 298 P. 321 (1931).

[31]*Id.* at 173 (emphasis omitted).

[32]*Burris v. General Ins. Co.,* 16 Wn. App. 73, 553 P.2d 125, *review denied,* 87 Wn.2d 1014 (1976).

The parties agreed that an employee generally is not within the course of employment for workers' compensation purposes when going to and from work. But Burris contended he was within the scope of employment because he was traveling at the direction of his employer and his employer benefited. The appellate court agreed there was an issue of fact whether he was acting in the scope of his employment when injured:

> The importance of the weeders reporting to the main office and being dispatched from there to different sites at the discretion of Pacific, coupled with (1) the fact Pacific transported 20 to 25 people to the Cold Creek property, (2) the fact more than 20 to 25 weeders would often times report at the main office, and (3) an admission by Pacific's manager that it was in Pacific's best interests to have as many weeders working in the different fields as possible, creates (albeit by inference) a question of fact as to whether Mark was employed when he reported to the plant . . . and was, therefore, traveling between the plant and the Cold Creek property within the purview of the exception.[33]

Thus, Washington courts have recognized the exception that an employee injured while traveling at the direction of his employer is acting within the course of employment. Washington courts have also recognized the exception that a worker going to or from work in a vehicle furnished by the employer may be in the course of employment.[34]

In this case, there is no dispute that Reed traveled from California to Washington at the direction of his employer and was in a rental car paid for by the employer when the accident occurred. He was going to his hotel, which was necessary to his job because his employer required him to work so far from home. Thus, he was acting in the course of employment.

---

[33]*Burris*, 16 Wn. App. at 76.

[34]*Westinghouse Elec. Corp. v. Department of Labor & Indus.*, 94 Wn.2d 875, 880, 621 P.2d 147 (1980); *Aloha Lumber Corp. v. Department of Labor & Indus.*, 77 Wn.2d 763, 466 P.2d 151 (1970).

Respondents argue, however, that because Reed was assigned to work in Washington for two months, Washington became his home and, therefore, he was engaged in an ordinary trip to work when the accident occurred. The same argument has been rejected in other jurisdictions.[35]

For example, in *Wright v. Industrial Commission*, Harold Wright's widow sought workers' compensation benefits for her husband's fatal injuries. He was assigned by his employer, an Illinois company, to supervise the installation of one of its machines in Tennessee. The assignment was expected to last 5 or 6 months. He was killed on a Saturday about two weeks after arriving in Tennessee. His employer argued that because he was to remain in Tennessee for such a long time, he, in effect, became a resident, so the rules regarding traveling employees should not apply. The Illinois Supreme Court rejected that argument:

> We can find no rational basis to distinguish between the employee who is continuously traveling and one who travels to a distant job location only to return when the work is completed. While it is true that the latter type of employee may become more familiar with the risks inherent in his out-of-town employment because he remains in one locale, the risks are still present. It would be inconsistent to deprive an employee of benefits of workmen's compensation simply because he must travel to a specific location for a period of time to fulfill the terms of his employment and yet grant the benefits to another employee because he continuously travels.[36]

Like the employee in *Wright*, Reed was required to travel to a specific out-of-town location to fulfill the terms of his employment. He, therefore, was exposed to greater risks than an employee required to travel only in an ordinary commute from home. That Reed expected to remain in Washington for two months did not significantly alter that risk. He, therefore, was acting in the course of his employment.

---

[35]*See Phillips Contracting, Inc. v. Hirst*, 905 P.2d 9, 12 (Colo. 1995); *Olinger Constr. Co. v. Mosbey*, 427 N.E.2d 910, 915-16 (Ind. Ct. App. 1981); *Wright v. Industrial Commission*, 62 Ill. 2d 65, 338 N.E.2d 379 (1975).

[36]*Wright*, 338 N.E.2d at 381.

Respondents suggest that because the time Reed spent traveling from California was not immediate to the time he was engaged in work for his employer, he was not acting in the course of his employment under RCW 51.08.013(1). But that statute, which provides coverage for injuries incurred while "going to and from work on the jobsite . . . insofar as such time is immediate to the actual time that the worker is engaged in the work process," creates an exception only to the general "going and coming" rule.

Similarly, the rule that an employee traveling at the direction of his employer, for a purpose that benefits the employer, is acting in the course of his employment is an exception to the general rule that injuries not incurred on the job or while performing one's duties are not covered. The statutory exception of RCW 51.08.013(1) does not eliminate the common-law "traveling employee" exception.

Finally, respondents contend that because Reed was traveling in a rental car, he was in an "alternative commute mode" and, therefore, was not acting in the course of his employment under RCW 51.08.013(2). That statute states that "acting in the course of employment" does not include:

> Time spent going to or coming from the employer's place of business in an alternative commute mode, notwithstanding that the employer (i) paid directly or indirectly, in whole or in part, the cost of a fare, pass, or other expense associated with the alternative commute mode; (ii) promoted and encouraged employee use of one or more alternative commute modes; or (iii) otherwise participated in the provision of the alternative commute mode.[37]

An "alternative commute mode" is

> (a) a carpool or vanpool arrangement whereby a group of at least two but not more than fifteen persons including passengers and driver, is transported between their places of abode or termini near those places, and their places of employment or educational or other institutions, where the driver is

---

[37] RCW 51.08.013(2)(a).

also on the way to or from his or her place of employment or educational or other institution; (b) a bus, ferry, or other public transportation service; or (c) a nonmotorized means of commuting such as bicycling or walking.[38]

"To commute" means to "travel back and forth regularly or frequently."[39] The statute clearly was intended to deny coverage to workers injured during ordinary trips to or from work, even if the employer encouraged or paid for the worker to travel using a particular form of transportation. It does not apply to workers traveling on a special errand at the employer's direction.[40]

■ When there can be only one reasonable inference from undisputed evidence, whether an employee was acting within the course of his employment is an issue of law for the court.[41] Respondents do not dispute that Reed was traveling to his hotel after flying from California at his employer's direction. There can be only one reasonable inference from that evidence: he was acting in the course of his employment.

Because Reed was acting in the course of his employment, he was immune from liability for a claim for contribution or indemnification. Respondents' amendment to their complaint, therefore, was futile. The trial court erred when it granted the motion to amend and denied Reed's motion for reconsideration. The case, therefore, is remanded for further proceedings consistent with this decision.

---

[38]RCW 51.08.013(3).

[39]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 461 (1966).

[40]*See Belnap v. Boeing Co.*, 64 Wn. App. 212, 222, 823 P.2d 528 (1992) (the rule excluding coverage for off-premises injuries does not apply if the journey is undertaken at the direction of the employer); *see also* RCW 51.32.015; RCW 51.36.040 (an employee who is injured during a lunch period while away from the jobsite at the employer's request is entitled to benefits).

[41]*Strachan v. Kitsap County*, 27 Wn. App. 271, 274, 616 P.2d 1251 (where there can be only one reasonable inference from undisputed facts, the question whether the employee was acting in the scope of his employment is one of law), *review denied*, 94 Wn.2d 1025 (1980).