117 P.3d 365 (2005)
BALL-FOSTER GLASS CONTAINER CO., Appellant,
v.
Alfred GIOVANELLI and The Department of Labor and Industries of the State of Washington, Respondents.
No. 54969-3-I.
Court of Appeals of Washington, Division One.
August 8, 2005.
*366 Amy L. Arvidson, Keehn Arvidson, PLLC, Seattle, WA, for Appellant.
Joseph Andrew Grube, Ricci Grube Aita, PLLC, Seattle, WA, for Respondent, Giovanelli.
Beverly Norwood Goetz, Office of the Attorney General, Seattle, WA, for Respondent, Dept. of L & I.
BAKER, J.
¶ 1 Alfred Giovanelli was a firebrick mason brought to Seattle by Ball-Foster Glass Container Company, a subsidiary of St. Gobain Corporation, to work on rebuilding a glass furnace. One Sunday when he was not working, Giovanelli set out to listen to music in a park near his hotel. On the way, he was hit by a car and gravely injured. The Department of Labor and Industries granted his claim for an industrial injury. St. Gobain unsuccessfully appealed to the Board of Industrial Insurance Appeals, then appealed to superior court and lost on summary judgment. St. Gobain argues that the court erred because issues of material fact exist. Because no issues of material fact exist, and because Giovanelli was acting in the course of employment when he was injured, we affirm.

I.
¶ 2 Alfred Gionavelli is a life-long resident of Bell Vernon, Pennsylvania. He worked most of his life as a mason, and in 1970 he began to specialize as a firebrick mason, which meant he built furnaces for glass and steel industries. Each job takes approximately three to seven weeks to complete. For the five years immediately before his accident, Giovanelli accepted only job offers from St. Gobain Corporation. In the year before his accident, Giovanelli worked on five furnaces for St. Gobain.
¶ 3 Royce "Sonny" Champ is the owner and sole employee of Sonny Champ Refractories. Sonny Champ Refractories provides St. Gobain with masons and supervisors for glass furnace rebuilds. Champ contacted Giovanelli and offered him a job working on a furnace in Seattle. Giovanelli accepted the position, but did not fill out paperwork until he arrived at the plant in Seattle. He and the other firebrick masons were hired as full-time, temporary employees of St. Gobain. *367 They were paid from the Seattle plant's payroll. Deductions for unemployment tax were paid to Washington.
¶ 4 About three weeks into the Seattle job, Giovanelli was not scheduled to work on a Sunday. He watched television in his hotel room. He later went to a flea market and returned. Giovanelli and Champ decided to walk to a nearby park because they had seen a sign advertising music. On the way to the park, Giovanelli was hit by a car. He was seriously injured and left permanently blind.
¶ 5 Giovanelli applied for workers' compensation benefits, and the Department of Labor and Industries allowed the claim. St. Gobain appealed to the Board of Industrial Insurance Appeals. Following a hearing, the industrial appeals judge issued a proposed decision and order affirming the Department's order. The judge stated that Giovanelli's employment circumstances with St. Gobain fell within the "traveling employee" doctrine. And as such, given the facts of his accident, his injury was covered as an industrial injury.
¶ 6 St. Gobain petitioned for review of the proposed decision and order, but the Board denied review and adopted the proposed decision and order as its final order. St. Gobain appealed to King County Superior Court. Giovanelli moved for summary judgment, which the court originally denied, but eventually granted. St. Gobain appeals.

II.
¶ 7 "RCW 51.52.110 and RCW 51.52.115 govern judicial review of matters arising under the Industrial Insurance Act."[1] Our inquiry is the same as that of the superior court "[w]hen a party appeals from a board decision, and the superior court grants summary judgment affirming that decision."[2] Summary judgment is properly granted when the evidence taken in the light most favorable to the non-moving party demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] Summary judgment is proper only if, from all the evidence, reasonable persons could reach but one conclusion.[4] And "[o]n issues of law, [we] may substitute [our] judgment for that of the agency; however, we accord great weight to the agency's view of the law it administers."[5]
¶ 8 St. Gobain argues that the court erred by granting summary judgment because several material facts were in dispute, including: 1) the nature and extent of Giovanelli's pay; 2) whether he was a "local" hire; 3) whether he was a St. Gobain employee on a business trip; 4) whether his presence in Seattle on that Sunday was to accommodate St. Gobain or otherwise further St. Gobain's interest; and 5) whether St. Gobain expected Giovanelli to remain in Seattle every Sunday to be available to work.
¶ 9 To determine whether material facts are in dispute, we must first decide under what theory to analyze Giovanelli's case: the "traveling employee" doctrine, as did the Board, or some other theory like the "going and coming" rule.
¶ 10 It is well-established Washington law that "the guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker."[6] But the Act only provides coverage for industrial injuries incurred during the course of employment.[7]
*368 ¶ 11 In Shelton v. Azar, Inc.,[8] we recognized that the reasoning in Washington cases is consistent with the "traveling employee" rule.[9] Citing cases from multiple jurisdictions, we explained the rule as "[w]hen employees are required by their employers to travel to distant jobsites, courts generally hold that they are within the course of their employment throughout the trip, unless they are pursuing a distinctly personal activity . . . ."[10] We also quoted another iteration of the rule from Professor Larson's Law of Workmen's Compensation:
Employees whose work entails travel away from the employer's premises are held in the majority of jurisdiction[s] to be within the course of their employment continuously during the trip, except when a distinct department [sic] on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.[[11]]
¶ 12 Although the facts of Shelton did not strictly require us to adopt the doctrine, we follow Shelton and accept the "traveling employee" rule as consistent with Washington law. But before we apply the rule, we first must determine whether or not Giovanelli qualified as a "traveling employee."
¶ 13 The first three issues of material fact raised by St. Gobain relate to the question of whether or not Giovanelli was a "traveling employee." St. Gobain argues that the nature and extent of Giovanelli's pay is an issue of material fact. St. Gobain appears to argue that Giovanelli was not a traveling employee because he was paid from the local payroll, payroll taxes were paid in Washington rather than Pennsylvania, and his expenses were paid in a different manner than were the expenses of permanent employees of St. Gobain.
¶ 14 Although these facts do distinguish Giovanelli from permanent employees who are required to travel at the behest of their employer, St. Gobain offers no authority that permanency of employment is a factor in the determination of whether an employee is a "traveling employee." Giovanelli was paid an hourly wage for eight hours to travel to Seattle. According to the mason's agreement, he was required to make his travel arrangements through St. Gobain. In addition to his regular wages, he received a per diem for each day away from home, including Sundays. The nature and extent of his pay did not create an issue of material fact because those facts lead to only one reasonable conclusion: he was a "traveling employee."
¶ 15 St. Gobain also argued that Giovanelli was an itinerant worker or a local hire, and thus not an employee on a business trip. But Giovanelli was not a wandering worker who happened to look for employment in our state. Instead, an agent of St. Gobain contacted him and offered him work in Seattle. Giovanelli accepted the offer. He traveled to Seattle at the expense of St. Gobain. He was paid for his travel time. These are not the type of arrangements made for an itinerant worker.
¶ 16 To determine whether or not Giovanelli was a local hire, we find instructive a similar analysis performed by the Appellate Court of Illinois in Chicago Bridge & Iron, Inc. v. Industrial Commission.[12] In Chicago Bridge, an employer contacted an itinerant boilermaker-welder by telephone while the worker was in Illinois.[13] The employer offered the worker a job in Minnesota, and the worker accepted.[14] The court determined that the contract was made in Illinois because "[a] contract is made where the last act necessary to give it validity occurs."[15]
*369 ¶ 17 Similarly, Giovanelli was not a local hire. He was contacted before he came to Washington, and offered the job that he accepted. In Washington, "[t]he general rule is that a contract is considered as having been entered into at the place where the offer is accepted or where the last act necessary to a meeting of the minds or to complete the contract is performed."[16] We conclude that Giovanelli qualifies under the traveling employee rule.
¶ 18 During oral argument, St. Gobain raised the specter of an overexpansion of workers' compensation law under the "traveling employee" rule. St. Gobain argued that allowing Giovanelli workers' compensation under the rule would open the door to every itinerant worker staying on a farmer's "back 40." If indeed those farm workers are contacted in their homes by the farmer, offered a position which they accept, are transported to the farm, paid for their time while in transit, and paid a per diem while they are on the farm including for days off, then those farm workers should be covered by the "traveling employee" rule, as should Giovanelli.
¶ 19 St. Gobain claims that material issues of fact exist concerning whether Giovanelli was in Seattle on the Sunday of the accident in order to further his employer's interest and whether St. Gobain expected Giovanelli to remain in Seattle every Sunday. Both of these issues relate to whether or not Giovanelli abandoned his course of employment.
¶ 20 Under Shelton, a "traveling employee" abandons the course of employment by engaging in a "distinctly personal activity."[17] St. Gobain argues that Giovanelli was not in Seattle to serve the purposes of the company, because he was on a day off. St. Gobain also makes much of the fact that he was headed to a nearby park to listen to music, even implying that because Giovanelli may have crossed the street against the light, he had abandoned the course of employment. We do not find any of these facts to be an issue in our consideration of whether or not Giovanelli had abandoned his course of employment.
¶ 21 In Shelton, we recognized that injuries arising out of necessary activities such as sleeping in hotels and eating in restaurants when away from home are compensable.[18] Similar to an employee sleeping in a hotel or eating in a restaurant, an employee, who is receiving a per diem and walks across a street near his hotel, is not departing on a "distinctly personal activity."
¶ 22 St. Gobain argues that Washington precedent set by a logging case from the 1930s requires us to conclude that Giovanelli was not acting in the course of employment. In Hama Hama Logging Co. v. Department of Labor and Industries,[19] our Supreme Court held that an employee of a logging company who lived at the logging camp during his employment was not injured in the course of employment when he was hurt during a trip on a company-owned, company employee-driven railroad speeder.[20] The court distinguished an employee injured while riding pursuant to his contract of employment from one who is merely permitted to ride in company-provided transportation free of charge for the employee's convenience.[21] The court commented that "[a] trip for the purpose of pleasure was not in any sense employment."[22]
¶ 23 But the decision in Hama Hama is inapposite to our analysis. Nowhere in the decision does the court consider the "traveling employee" rule. Further, although the employees were required to live at the camp, they often left on Saturday or Sunday morning and returned for work on Monday morning.[23] The claimant in Hama Hama was paid only for days that he worked, thus he received no stipend or per diem for days *370 off.[24] On the other hand, as mentioned above, Giovanelli was paid a per diem for all days, including Sundays. He was also provided with a rental car and he was not prohibited from using the rental car on his days off. Given these differences in circumstances, we do not find the analysis in Hama Hama to be instructive.
¶ 24 Giovanelli was a "traveling employee" who did not depart from the course of employment on a "distinctly personal activity." We therefore follow Shelton and affirm the Department's, Board's, and trial court's decision to grant Giovanelli's claim.
¶ 25 AFFIRMED.
WE CONCUR: ELLINGTON, ACJ, and GROSSE, J.
NOTES
[1] Stelter v. Dep't of Labor & Indus., 147 Wash.2d 702, 707, 57 P.3d 248 (2002).
[2] Stelter, 147 Wash.2d at 707, 57 P.3d 248 (citing Our Lady of Lourdes Hosp. v. Franklin County, 120 Wash.2d 439, 451, 842 P.2d 956 (1993)).
[3] Stelter, 147 Wash.2d at 707, 57 P.3d 248 (citing CR 56(c); Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993)).
[4] Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993).
[5] Dep't of Labor & Indus. v. Kantor, 94 Wash.App. 764, 772, 973 P.2d 30 (1999).
[6] Dennis v. Dep't of Labor & Indus., 109 Wash.2d 467, 470, 745 P.2d 1295 (1987).
[7] RCW 51.32.015; RCW 51.08.013.
[8] 90 Wash.App. 923, 954 P.2d 352 (1998).
[9] Shelton, 90 Wash.App. at 932, 954 P.2d 352.
[10] Shelton, 90 Wash.App. at 933, 954 P.2d 352.
[11] Shelton, 90 Wash.App. at 933, 954 P.2d 352 (quoting Arthur Larson, Law of Workmen's Compensation § 25 (1990)).
[12] 248 Ill.App.3d 687, 188 Ill.Dec. 573, 618 N.E.2d 1143 (1993).
[13] Chicago Bridge, 188 Ill.Dec. 573, 618 N.E.2d at 1147.
[14] Chicago Bridge, 188 Ill.Dec. 573, 618 N.E.2d at 1147.
[15] Chicago Bridge, 188 Ill.Dec. 573, 618 N.E.2d at 1147 (citing F & E Erection Co. v. Industrial Comm'n, 162 Ill.App.3d 156, 113 Ill.Dec. 136, 514 N.E.2d 1147 (1987)).
[16] Norm Adver. v. Monroe St. Lumber Co., 25 Wash.2d 391, 396, 171 P.2d 177 (1946).
[17] Shelton, 90 Wash.App. at 933, 954 P.2d 352.
[18] Shelton, 90 Wash.App. at 933, 954 P.2d 352.
[19] 157 Wash. 96, 288 P. 655 (1930).
[20] Hama Hama, 157 Wash. at 97-98, 104, 288 P. 655.
[21] Hama Hama, 157 Wash. at 103, 288 P. 655.
[22] Hama Hama, 157 Wash. at 104, 288 P. 655.
[23] Hama Hama, 157 Wash. at 97-98, 288 P. 655.
[24] Hama Hama, 157 Wash. at 99, 288 P. 655.