(No. 46770.— )

MYRTIS T. WRIGHT, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.*—(Spray-Con Company, Appel-
lee.)

*Opinion filed November 25, 1975.*

CREBS, J., took no part.

Laurence M. Dunlap and Brill & Levinson, both of Chicago (David Levinson, Jr., of counsel), for appellant.

Perz & McGuire, of Chicago (Robert F. Ferbend and James C. Serkland, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, Myrtis Wright, sought workmen's compensation for the fatal injuries sustained by her husband, Harold Wright, in a car accident which she maintains arose out of and in the course of his employment for the Spray-Con Company (hereinafter Spray-Con). From the evidence adduced at a hearing the arbitrator found that Harold

Wright had sustained accidental injuries resulting in his death which arose out of and in the course of his employment and awarded compensation. On review before the Industrial Commission, the arbitrator's decision was reversed. On *certiorari* to the circuit court of Cook County, the decision of the Industrial Commission was affirmed. The court determined that Wright was not a "traveling employee." Claimant appeals, contending that her husband's fatal accident which occurred on a Saturday away from his home at a location to which he had been sent by his employer should, as a matter of law, be held to have arisen out of and in the course of his employment. Ill. Rev. Stat. 1973, ch. 110A, par. 302(a).

The facts are undisputed. Wright lived in Wheeling, Illinois, and worked for Spray-Con, an Illinois company, as a field erection supervisor. Spray-Con manufactured industrial machines and Wright's duties consisted of supervising the installation of these machines in the factories of the purchasers. These duties frequently required that he travel to out-of-state locations and remain there during the installation of the machinery for 5 to 6 month periods. During such work he was paid on an hourly basis for a 40-hour work week, and received $15 *per diem* for expenses in addition to an allowance for the mileage he traveled in his automobile to and from the out-of-state location.

At the time of his death Wright was working at a job site located in Newburn, Tennessee. He arrived in Tennessee on Sunday, June 29, 1969, and rented a motel room in Dyersburg, which is 9 miles southwest of Newburn on State highway 51. He began work the following Monday. On Saturday, July 12, 1969, Wright was killed in an unexplained head-on car collision on State highway 20, approximately 6 miles southeast of Dyersburg. According to the police report, which was entered in evidence before the arbitrator, the accident occurred at 12:20 p.m., the road was straight and dry, and the weather was clear.

At a hearing before the arbitrator, claimant presented evidence to the effect that, on the Saturday Wright was killed, he was working overtime as he occasionally did. A fellow employee testified that during the week prior to Wright's death certain welding supplies were needed for their work and Wright intended to purchase them. On the morning of his death, Wright spoke with the claimant (his wife) by telephone and commented that he planned "to look up some welding equipment" that day. It was established from various witnesses that a welding supply store was located in Jackson, Tennessee, which is 55 miles southeast of Dyersburg on State highway 20. Claimant contended that Wright may have been returning from the supply store in Jackson at the time of his death. Accordingly, she maintained that Wright was engaged in his employer's business and his death must be held to have arisen out of and in the course of his employment.

Spray-Con, however, offered in evidence the deposition of Harry Estes, an employee of the welding supply store, to rebut this assertion. Estes stated in his deposition that the day before Wright's death, he was delivering welding supplies near Newburn and met Wright at a local restaurant. Wright told him about the needed supplies and these were provided from the materials Estes carried on his truck. Estes further stated that the supply store was closed on Saturday.

Claimant contends, and Spray-Con does not dispute, that courts generally regard employees whose duties require them to travel away from their employer's premises (traveling employees) differently from other employees when considering whether an injury arose out of and in the course of employment. But Spray-Con maintains that a traveling employee is one whose business requires travel, such as a traveling salesman or a company representative who covers a general and often large geographical area. It urges that an hourly construction worker at a specific construction site is not a traveling

employee within the meaning of that term. During oral argument Spray-Con conceded that an employee who travels for his employer spending only 2 or 3 days at any location can properly be considered a traveling employee. It argued, however, that where an employee remains at a specific job location for 5 or 6 months, as in the present case, he becomes, in effect, a "resident" of that location and can no longer be classified as a traveling employee.

Spray-Con's argument is unconvincing. We can find no rational basis to distinguish between the employee who is continuously traveling and one who travels to a distant job location only to return when the work is completed. While it is true that the latter type of employee may become more familiar with the risks inherent in his out-of-town employment because he remains in one locale, the risks are still present. It would be inconsistent to deprive an employee of benefits of workmen's compensation simply because he must travel to a specific location for a period of time to fulfill the terms of his employment and yet grant the benefits to another employee because he continuously travels.

The next question presented is whether Wright's activity was compensable. "The Workmen's Compensation Act was not intended to insure employees against all accidental injuries but only those which arise out of acts which the employee is instructed to perform by his employer; acts which he has a common law or statutory duty to perform while performing duties for his employer [citations] ; *or acts which the employee might be reasonably expected to perform incident to his assigned duties.* [Citations.] " (Emphasis added.) (*Ace Pest Control, Inc. v. Industrial Com.*, 32 Ill.2d 386, 388.) Under the rationale of the third category, this court has held compensable fatal injuries suffered by traveling employees who were engaged in activities other than those they were specifically instructed to perform by their employers. The test for determining whether an injury to a traveling employee

arose out of and in the course of his employment is the reasonableness of the conduct in which he was engaged and whether it might normally be anticipated or foreseen by the employer. *Wexler & Co. v. Industrial Com.,* 52 Ill.2d 506, 510; *U.S. Industries v. Industrial Com.,* 40 Ill.2d 469, 475.

The key factors of this test are "reasonableness" and "foreseeability." The leading Illinois cases on traveling employees, *Ace Pest Control, Inc. v. Industrial Com.,* 32 Ill.2d 386, *U.S. Industries v. Industrial Com.,* 40 Ill.2d 469, and *Wexler & Co. v. Industrial Com.,* 52 Ill.2d 506, based the propriety of an award on the presence or absence of these factors in the activity in which the employee was engaged at the time of his injury. In *Ace Pest Control,* a termite control operator, who was employed in the vicinity of Peoria, Illinois, was killed by a passing automobile while aiding a stranded motorist. His death was held to have arisen out of and in the course of employment. This court found that the activities the employee was performing at the time of his death "were such as might have been reasonably expected or foreseen by his employer." (32 Ill.2d 386, 389.) It was reasonably foreseeable that a man who spends part of his day traveling might stop to aid a fellow motorist. In *U.S. Industries* the employee was injured while on a midnight pleasure drive in unfamiliar, mountainous terrain. In reversing an award of compensation, this court said that the employee's action was "a clearly unanticipated, unforeseeable and unreasonable activity not normally to be expected of a traveling employee." (40 Ill.2d 469, 475.) In *Wexler,* a traveling sales representative was killed in a car collision in Omaha, Nebraska. The accident occurred on a holiday, and it was unknown whether he was returning from a business appointment or from a recreational outing. This court found that it was to be anticipated that while on a business trip an employee would engage in "reasonable private conduct." (52 Ill.2d 506, 511.) We further remarked that

"It would be obviously unreasonable and contrary to the intendment of the Workmen's Compensation Act and its purposes to say that a traveling employee has the protection of the Act only when in the physical act of performing selling or other duties and only in the course of a normal business day." 52 Ill.2d 506, 511.

Viewing the facts of the present case it was not unreasonable or unforeseeable that Wright, as a traveling employee, would be driving his automobile on a highway 6 miles from the motel where he was staying while engaged on his employer's project. It is expected that an employee working out of town will seek some type of recreational activity on his days of rest. Claimant has presented sufficient evidence to show Wright's activity at the time of his death was neither unreasonable nor unforeseeable.

The fact that the cause of Wright's accident is unknown does not preclude compensation. (*Cf. Bradford Supply Co. v. Industrial Com.*, 50 Ill.2d 190.) Whether Wright was returning from a possible business errand or from some type of recreational outing, Spray-Con has failed to present any evidence to show Wright's conduct at the time of his injury was unreasonable. Considering the evidence presented the only inference that can be drawn is that Wright was killed while engaged in reasonable conduct which might normally be anticipated or foreseen by his employer.

Where conflicting inferences may be derived from the undisputed facts, the Industrial Commission is empowered to draw the inference and its decision will not be disturbed on review unless contrary to the manifest weight of evidence. But, where only a single inference exists, as in the present case, the issue involved becomes one of law and reviewable by this court. (*Mastercraft Co. v. Industrial Com.*, 58 Ill.2d 155, 157.) We conclude that, as a matter of law, Wright's death arose out of and in the course of his employment. Accordingly, the judgment of the circuit court of Cook County is reversed, and the cause is

remanded to the circuit court with directions to enter an order remanding this cause to the Industrial Commission for entry of the appropriate award.

*Reversed and remanded, with directions.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.