(No. 61236.—

MARY HOFFMAN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Regional Office of Education, Winnebago-Boone County, Appellee).

*Opinion filed November 21, 1985.*

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Charles E. Anesi and Richard A. Kimnach, of counsel), for appellant.

Williams & McCarthy, of Rockford (Richard A. Berman and Lynne K. Bruggen, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Claimant, Mary Hoffman, sought workers' compensation benefits from respondent, Regional Office of Education, Winnebago-Boone County, for an injury to her right leg. An arbitrator awarded claimant her medical expenses under section 8(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a)) and compensation for permanent partial disability to the extent of 40% of the use of her right leg under section 8(e) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)). The arbitrator's award was reversed by the Industrial Commission, which concluded that claimant's injury had not arisen out of and in the course of her employment with respondent. The circuit court of Winnebago County reversed the Commission's decision and reinstated the arbitrator's award. The Industrial Commission division of the appellate court, with one judge dissenting, reversed the decision of the circuit court and confirmed the order

of the Commission. (128 Ill. App. 3d 290.) Pursuant to Supreme Court Rule 315(a) (94 Ill. 2d R. 315(a)) we granted claimant leave to appeal.

At issue is whether claimant's injury arose out of and in the course of her employment with respondent.

The evidence presented at the hearing before the arbitrator showed that respondent had hired claimant, a registered nurse, as its director of health services approximately eight months before her injury. As director of health services, claimant was responsible for supervising health-service programs in the elementary and secondary schools in Winnebago and Boone counties, with the exception of those schools located in the city of Rockford. In addition, she personally supervised 14 health aides who worked at various schools in the two counties.

Claimant testified that she was obligated to supply an automobile because her position required her to meet regularly with school nurses and health aides throughout the two counties. She typically worked at the office of the regional superintendent of schools in downtown Rockford on Monday and Friday. On Tuesday, Wednesday and Thursday, claimant would meet with nurses and health aides at the various schools. She worked from 8 a.m. to 4 p.m.

According to claimant she spoke to Frank Parrino, who was regional superintendent of schools and her immediate supervisor, on May 15, 1978, about the possibility of conducting a staff meeting for health aides at her home. According to claimant, she also told Parrino that she "might need some extra seating space for the home." Parrino testified that he approved the staff meeting at claimant's house. However, he testified that he could not remember any other details about his conversation with claimant.

On the morning of May 17, 1978, the day of the acci-

dent, claimant left her house in Rockford and drove directly to a school in Winnebago. Thereafter, she visited schools in Durand, Shirland, and Rockton. After completing her meeting in Rockton, claimant drove home to pick up some forms which had been mailed to her house by health aides. She arrived at home shortly before 3 p.m., picked up the forms, and then proceeded to the Goldblatt's Department Store at 20th and Charles streets. The store was approximately one mile from claimant's home in the direction of respondent's office. She intended to drive to the office after she finished shopping. According to claimant, she stopped at the store to purchase some red-felt-tipped pens, a picnic table, and benches. She planned to use the pens to prepare a chart for work, and the picnic table and benches for the staff meeting at her home. On cross-examination, claimant testified that she never sought reimbursement for the picnic table and benches and stated she had intended to keep these for her own use.

Upon arriving at the store, claimant discovered that only the picnic table and benches were available for purchase. She purchased the table and benches and then walked to the store's loading dock where they were located. On her way to the loading dock, her foot became entangled in a piece of cord which was lying on the ground. The cord caused her to fall and strike her right knee on the ground. She was subsequently transported by ambulance to a hospital. An examination and X rays of her right knee revealed a fracture of the patella. A cast was applied to her right leg, and she was given crutches. Claimant missed one day of work.

June Halvorson, Parrino's administrative assistant, testified that red-felt-tipped pens had been available in the office prior to claimant's accident. She admitted on cross-examination, however, that she did not specifically know whether the pens were available in the office on

the day of claimant's injury. Both claimant and Parrino testified that it was customary for employees to purchase small items, such as pens, and not seek reimbursement for the items.

Initially we note that claimant's position as director of health services required her to travel to schools throughout Winnebago and Boone counties. We agree with the appellate court that claimant's status was that of a "traveling employee" and that courts generally consider such employees differently from other employees when considering whether an injury arose out of and in the course of employment. (*Wright v. Industrial Com.* (1975), 62 Ill. 2d 65, 68; *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 510.) However, a finding that a particular claimant is a traveling employee does not exempt the claimant from proving that an injury arose out of and in the course of employment, and some injuries, even when incurred by traveling employees, are not compensable under the Act. See, *e.g., U.S. Industries v. Industrial Com.* (1968), 40 Ill. 2d 469 (injuries suffered as the result of midnight pleasure drive into the mountains not compensable under the Act).

In each instance where this court has considered whether a particular injury arose out of and in the course of employment, it has emphasized that the Act was not intended to insure employees against all accidental injuries. (*Robinson v. Industrial Com.* (1983), 96 Ill. 2d 87, 91; *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 510.) Rather, the Act was intended to compensate only those injuries which arise out of (1) acts which the employee was instructed to perform by his employer, (2) acts which he has a common law or statutory duty to perform while performing duties for his employer, or (3) as explained below, acts which the employee might be reasonably expected to perform incident to his assigned duties. *Robinson v. Industrial Com.*

(1983), 96 Ill. 2d 87, 91; *Ace Pest Control, Inc. v. Industrial Com.* (1965), 32 Ill. 2d 386, 388.

Claimant does not argue that her injury arose out of an act which she was instructed to perform by her employer or an act which she had a common law or statutory duty to perform while working for respondent. She contends, however, that her injury arose out of an act which she might be reasonably expected to perform as an incident to her assigned duties.

In determining whether an act is one which an employee might be reasonably expected to perform as an incident to his or her assigned duties, the court has considered whether the act was "reasonable" and "foreseeable." (*Wright v. Industrial Com.* (1975), 62 Ill. 2d 65, 70.) The court in *Wright* explained:

> "Under the rationale of the third category, this court has held compensable fatal injuries suffered by traveling employees who were engaged in activities other than those they were specifically instructed to perform by their employers. The test for determining whether an injury to a traveling employee arose out of and in the course of his employment is the reasonableness of the conduct in which he was engaged and whether it might normally be anticipated or foreseen by the employer." (62 Ill. 2d 65, 69-70.)

See also *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506.

In the present case, the Industrial Commission determined that claimant's injury did not arise out of and in the course of her employment. After reviewing the record, we agree with the appellate court that the Commission's decision was not against the manifest weight of the evidence. The record shows that claimant was injured while she was walking to the loading dock of a department store after purchasing a picnic table and benches. Although there was some evidence that claimant intended to use the table and benches for a work-related

meeting, it is undisputed that she thereafter intended to keep them for her own use. She never sought reimbursement for the table and benches from respondent. Moreover, we do not think that the claimant's trip to the store to purchase the picnic table and benches was foreseeable. As the appellate court observed, "the only evidence in the record is that claimant stated to respondent that she might need some extra seating for a meeting whose date had not yet been set. There was apparently no discussion whether such seating would be purchased, and if so, by whom, or rented, or borrowed from a neighbor." (128 Ill. App. 3d 290, 295.) Furthermore, although the record indicates that respondent's employees sometimes purchased small items for which they did not seek reimbursement from respondent, there is no evidence that they made purchases like the one here.

Claimant contends that she also went to the store to purchase felt-tipped pens which she planned to use in the preparation of a chart for work. She argues that this purpose rendered her trip reasonable and foreseeable, since employees often purchased such items. The evidence with respect to the pens was conflicting. June Halvorson, respondent's administrative assistant, testified that such pens were available in the office prior to the date of claimant's accident. Claimant questions Halvorson's recollection as to the availability of the pens on the date of the accident. However, claimant herself cannot be sure the pens were unavailable because she did not go into the office that day prior to her trip to the department store. The record also indicates that claimant never purchased the pens. Thus, it was permissible for the Commission to find either that the claimant never intended to purchase the pens, or that, because the pens were available in the office, it was unforeseeable that she would purchase the pens at a store. The court recently noted that "[r]esolving conflicts in the evi-

202

dence, drawing inferences from the testimony, and determining the credibility of witnesses and the weight to be given their testimony are matters within the province of the Industrial Commission." (*Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 406; see also *Campbell v. Industrial Com.* (1983), 99 Ill. 2d 210, 218.) The Commission is entitled to draw reasonable inferences from both direct and circumstantial evidence. A court will not disregard or reject permissible inferences merely because other inferences might have been drawn. *Auler Law Offices v. Industrial Com.* (1984), 99 Ill. 2d 395, 400; *Castaneda v. Industrial Com.* (1983), 97 Ill. 2d 338, 341.

We hold that the Commission's finding that claimant's injury did not arise out of and in the course of her employment was not against the manifest weight of the evidence or contrary to law.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*