# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*The Venture—Newberg-Perini, Stone & Webster*
*v. Illinois Workers' Compensation Comm'n*, 2013 IL 115728

| | |
|---|---|
| Caption in Supreme Court: | THE VENTURE—NEWBERG-PERINI, STONE & WEBSTER, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION (Ronald Daugherty, Appellee). |
| Docket No. | 115728 |
| Filed | December 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An injury occurred while going to work, precluding workers' compensation, where a pipefitter accepted a temporary job 200 miles from his home and was involved in an automobile accident while commuting from a motel 30 miles from the worksite—traveling employee exception not applicable. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Patrick Kelley, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |

Counsel on Appeal

Theodore J. Powers, Gregory A. Rode and Jeffrey N. Powell, of Rusin Maciorowski & Friedman, Ltd., and Michael Resis, of SmithAmundsen LLC, all of Chicago, for appellant.

Jonathan T. Nessler, of The Law Offices of Frederic W. Nessler & Associates, Ltd., of Springfield, for appellee.

L. Elizabeth Coppoletti, of Nyhan, Bambrick Kinzie & Lowry, P.C., and Dave Taylor, all of Chicago, for *amicus curiae* Illinois Self-Insurers Association.

George J. Cullen and John W. Powers, of Cullen, Haskins, Nicholson & Menchetti, P.C., of Chicago, for *amici curiae* Illinois AFL-CIO and Illinois Trial Lawyers Association.

Justices

CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.
Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.
Justice Kilbride dissented, with opinion.

## OPINION

¶ 1    Ronald Daugherty was a member of Plumbers & Pipefitters Union Local 137 (Local 137) based in Springfield, Illinois. Due to a lack of available work in his local area, Daugherty took a position with The Venture—Newberg-Perini, Stone & Webster (Venture) located approximately 200 miles from his home. Daugherty had temporarily relocated to a nearby motel for the job and was seriously injured in an automobile accident on his way to work. As a result, Daugherty sought workers' compensation benefits.

¶ 2    The arbitrator found that Daugherty failed to show that the injury arose out of and in the course of his employment. The Illinois Workers' Compensation Commission (Commission) reversed the arbitrator's conclusion. On administrative review, the circuit court of Sangamon County set aside the Commission's finding. The appellate court reversed the circuit court's judgment, finding that Daugherty was a "traveling employee" at the time of the injury. The appellate court denied Venture's petition for rehearing, but granted certification pursuant to Rule 315(a), and this court granted Venture's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010). For the following reasons, we reverse the judgment of the appellate court and affirm the circuit court's judgment.

¶ 3                                            BACKGROUND

¶ 4          At the time of the accident, Daugherty was a resident of Springfield, Illinois, and was a pipefitter and member of Local 137, working out of Springfield. Members of Local 137 were permitted to take jobs outside the local territory, but only when no work was available locally. Due to a lack of available work in the local area, Daugherty took a position with Venture at a plant located in Cordova, Illinois, located about 200 miles from Springfield. While working at the Cordova plant, Daugherty was expected to work 7 days a week, 12 hours a day. Due to the distance and long hours, Daugherty and his fellow union member, Todd McGill, decided to stay at a local motel.

¶ 5          Daugherty and McGill first reported to work at the Cordova plant on March 23, 2006. After completing work that day, the men went to Lynwood Lodge to spend the night. The motel was located about 30 miles from the Cordova plant. The men were scheduled to resume work at 7 a.m. the following day. Around 6 a.m. the next morning, McGill was driving Daugherty to work in McGill's pickup truck. The vehicle skidded on ice while crossing an overpass, and Daugherty suffered serious injuries. As a result of this accident, Daugherty sought workers' compensation benefits.

¶ 6          Daugherty's position with the Cordova plant was to be temporary. Under Local 137's normal policy, members are terminated at the completion of a job and are expected to seek a new position. Daugherty had worked for Cordova on four other short-term positions in the two years prior to the accident.

¶ 7          Daugherty testified that it was his understanding that Venture wanted workers to be within an hour's drive of the plant, so that they were available for work when needed. Daugherty's coworker, McGill, also testified that Venture did not direct workers where to stay and that, while Venture desired its employees to be located close to the plant, the workers were not required to relocate to be closer to the plant. An employee of Venture, Anthony Cahill, testified that Venture derived a benefit from workers residing within the local geographic area due to emergency labor needs. Venture, however, did not direct workers where to stay or what route to take to work. Daugherty was not reimbursed for travel expenses or compensated for travel time. Cahill noted that only existing employees who were transferred to another location were compensated for travel expenses.

¶ 8          The arbitrator concluded that Daugherty had failed to prove that his injuries arose out of and in the course of his employment. The arbitrator also found that Daugherty did not qualify for the traveling employee exception.

¶ 9          In a divided decision, the Commission reversed the arbitrator's decision, concluding that while ordinarily an accident occurring while an employee travels to work is not considered to be one that arises out of and in the course of employment, two exceptions applied here. First, the Commission found the accident occurred within the course of Daugherty's employment because Daugherty's course or method of travel was determined by the demands and exigencies of the job, rather than his personal preference. The Commission acknowledged that Daugherty was not required to stay in the local area, but found that "as a practical matter," Daugherty needed to have stayed within a reasonable commuting distance

from the plant. Second, the Commission found that Daugherty was a "traveling employee" at the time of the accident.

¶ 10    On administrative review, the circuit court found that the Commission misconstrued or misapplied Illinois law and set aside the Commission's findings. The appellate court reversed. 2012 IL App (4th) 110847WC. Relying on this court's decision in *Wright v. Industrial Comm'n*, 62 Ill. 2d 65, 69 (1975), the majority of the appellate court found that Daugherty qualified as a "traveling employee" and that his injury arose out of the course of his employment. Justice Hudson dissented, finding that Daugherty's injury, occurring during his commute to work, did not arise out of and in the course of his employment. The dissent also disagreed with the majority's application of the traveling employee exception.

¶ 11                                          ANALYSIS

¶ 12    Venture argues that the appellate court erred in reversing the circuit court. First, Venture maintains that Daugherty was not a traveling employee. Venture focuses on the relevant facts, noting that Daugherty was a temporary employee and Venture did not send Daugherty to work at the Cordova plant. Venture also disputes the Commission's finding that Daugherty was acting under the direction or control of Venture when he chose to relocate closer to the work site and was injured on the way to work.

¶ 13    Daugherty, however, argues that the Commission's findings should be upheld under both exceptions. Daugherty's position is that he was a traveling employee because he was an employee who was traveling away from his home community for his employer. Daugherty also maintains that his injury arose out of and in the course of his employment because Daugherty's course of travel was determined by the demands and exigencies of the job, rather than his personal preference.

¶ 14    The parties also dispute the applicable standard of review. "Before a reviewing court may overturn a decision of the Commission, the court must find that the award was contrary to law or that the Commission's factual determinations were against the manifest weight of the evidence. [Citation.] On questions of law, review is *de novo*, and a court is not bound by the decision of the Commission. [Citation.] On questions of fact, the Commission's decision is against the manifest weight of the evidence only if the record discloses that the opposite conclusion clearly is the proper result." *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). Because Daugherty's argument fails under either standard, however, we need not resolve the parties' dispute regarding the standard of review.

¶ 15                                  Traveling Employee

¶ 16    "The general rule is that an injury incurred by an employee in going to or returning from the place of employment does not arise out of or in the course of the employment and, hence, is not compensable." *Commonwealth Edison Co. v. Industrial Comm'n*, 86 Ill. 2d 534, 537 (1981). This court has explained the purpose behind this rule, noting that "the employee's trip to and from work is the product of his own decision as to where he wants to live, a matter in which his employer ordinarily has no interest." *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965).

¶ 17    An exception applies, however, when the employee is a "traveling employee." "[C]ourts generally regard employees whose duties require them to travel away from their employer's premises (traveling employees) differently from other employees when considering whether an injury arose out of and in the course of employment." *Wright v. Industrial Comm'n*, 62 Ill. 2d 65, 68 (1975); *Hoffman v. Industrial Comm'n*, 109 Ill. 2d 194, 199 (1985).

¶ 18    If a traveling employee is injured, the court then considers whether the employee's activity was compensable. *Wright*, 62 Ill. 2d at 69. This court has found that injuries arising from three categories of acts are compensable: (1) acts the employer instructs the employee to perform; (2) acts which the employee has a common law or statutory duty to perform while performing duties for his employer; (3) acts which the employee might be reasonably expected to perform incident to his assigned duties. Daugherty argues that the third category applies here. Considering the third category, this court has found that traveling employees may be compensated for injuries incurred while performing an act they were not specifically instructed to perform. The act, however, must have arisen out of and in the course of his employment. To make this determination, the court considers the reasonableness of the act and whether it might have reasonably been foreseen by the employer.

¶ 19    The parties primarily rely on two cases: *Wright*, 62 Ill. 2d 65, and *Chicago Bridge & Iron, Inc. v. Industrial Comm'n*, 248 Ill. App. 3d 687 (1993). In *Wright*, an employee, Myrtis Wright, was a field erection supervisor who was frequently required to travel to out-of-state locations and stay there for months at a time. *Wright*, 62 Ill. 2d at 67. In addition to his hourly wage, Wright received *per diem* for traveling expenses as well as mileage reimbursement. *Id.* Wright was working at a job site located in Tennessee and had rented a motel room located near the job site. *Id.* On a Saturday afternoon, Wright was killed in a car accident. *Id.* Testimony during the trial showed that it was unclear as to where Wright was traveling at the time of the accident. *Id.* at 68. This court found that the traveling employee exception applied, noting that "[i]t would be inconsistent to deprive an employee of benefits of workmen's compensation simply because he must travel to a specific location for a period of time to fulfill the terms of his employment and yet grant the benefits to another employee because he continuously travels." *Id.* at 69.

¶ 20    In *Chicago Bridge & Iron*, Danny Reed was hired by the employer and was "periodically required" to travel to various job sites out of state. *Chicago Bridge & Iron*, 248 Ill. App. 3d at 688. Reed had worked exclusively for the employer for 19 years, but his employment was not continuous, as he was terminated at the end of each temporary job and rehired as necessary. *Id.* at 692-93. Reed was compensated for mileage when traveling to work sites. *Id.* at 689. One such job site was located in Minnesota, and Reed stayed in a motel near the job site. *Id.* Reed was injured in a car accident when driving from the motel to the job location. *Id.* The appellate court found that the traveling employee exception applied. *Id.* at 694.

¶ 21    Courts in Illinois have considered a variety of other examples of traveling employees, including traveling salesmen (*Urban v. Industrial Comm'n*, 34 Ill. 2d 159 (1966)); a field mechanic who traveled to service heavy-duty equipment (*Howell Tractor & Equipment Co. v. Industrial Comm'n*, 78 Ill. 2d 567 (1980)); a director of health services for a regional office of education who traveled to meet with local schools (*Hoffman v. Industrial Comm'n*,

109 Ill. 2d 194 (1985)); a union official who traveled to attend hearings and negotiate on behalf of his union (*District 141, International Ass'n of Machinists & Aerospace Workers v. Industrial Comm'n*, 79 Ill. 2d 544 (1980)); a bank manager traveling between two bank branches (*Kertis v. Illinois Workers' Compensation Comm'n*, 2013 IL App (2d) 120252WC); and a truck driver (*Potenzo v. Illinois Workers' Compensation Comm'n*, 378 Ill. App. 3d 113 (2007)).

¶ 22    Prior to applying *Wright* and *Chicago Bridge & Iron* to the instant case, it is helpful to review the relevant facts. In reaching its conclusion, the Commission made the following findings of fact: (1) Daugherty testified that it was his understanding that Venture wanted workers to be within an hour's traveling distance from the plant; (2) union workers were not reimbursed for travel accommodations or compensated for travel time for positions taken outside their local territory (and Venture did not reimburse Daugherty for his travel for this job); (3) Daugherty was not required to take the job at the Cordova plant and would not have been permitted to take the job if his local union had a job available, as union workers could take jobs outside their local territory only if jobs were not available within the local territory; (4) Daugherty had worked on four short-term projects for Venture in 2004 and 2006, and at the end of each project, he was laid off and no longer considered an employee of Venture; (5) Todd McGill, a fellow union member who shared a motel room with Daugherty and was driving the truck involved in the accident, testified that Venture did not make motel arrangements, tell them where to stay or pay for travel expenses. McGill also testified that he was not required to relocate closer to the work site, but acknowledged that Venture desired its employees to be located closer to the plant.

¶ 23    *Wright* was a permanent employee who was regularly required by his employer to travel out of state. *Wright*'s employer reimbursed him with *per diem* and mileage expenses. Reed, the plaintiff in *Chicago Bridge & Iron*, was not a permanent employee, but he had worked exclusively for the employer for 19 years. Like *Wright*, Reed was reimbursed for his mileage expenses and was "required" to travel for the position. Furthermore, in each of the remaining cases cited above, the employee was regularly employed and directed by his or her employer to travel to a remote location. *Urban v. Industrial Comm'n*, 34 Ill. 2d 159 (1966); *Howell Tractor & Equipment Co. v. Industrial Comm'n*, 78 Ill. 2d 567 (1980); *Hoffman v. Industrial Comm'n*, 109 Ill. 2d 194 (1985); *District 141, International Ass'n of Machinists & Aerospace Workers v. Industrial Comm'n*, 79 Ill. 2d 544 (1980); *Kertis v. Illinois Workers' Compensation Comm'n*, 2013 IL App (2d) 120252WC; *Potenzo v. Illinois Workers' Compensation Comm'n*, 378 Ill. App. 3d 113 (2007).

¶ 24    Unlike the plaintiff in *Wright*, Daugherty was not a permanent employee of the employer. Nor was Daugherty working for Venture on a long-term exclusive basis. He had worked only four other short-term Venture projects over the two years preceding the accident. Furthermore, nothing in Daugherty's contract required him to travel out of his union's territory to take the position with Venture. As Daugherty testified, he made the personal decision that the benefits of the pay outweighed the personal cost of traveling. Daugherty was hired to work at a specific location and was not directed by Venture to travel away from this

work site to another location.[1] Rather, Daugherty merely traveled from the premises to his residing location, as did all other employees. Finally, Venture did not reimburse Daugherty for his travel expenses, nor did it assist Daugherty in making his travel arrangements. Due to these facts, the Commission's conclusion that Daugherty was a traveling employee was against the manifest weight of the evidence.

¶ 25    Not only does the case law fail to support Daugherty's position that he qualified for the traveling employee exception, but the appellate court position raises serious policy concerns. For example, while an employee who chooses to relocate closer to a temporary job site can receive benefits if injured on the way to work, an employee who permanently resides close to the job site is not entitled to benefits if injured on the way to work.

¶ 26    Because we conclude that Daugherty was not a traveling employee at the time of the accident, we need not consider whether the injury was compensable.

¶ 27                    Demands & Exigencies of the Job

¶ 28    The Commission also found that the accident occurred within the course of Daugherty's employment because Daugherty's course or method of travel was determined by the demands and exigencies of the job, rather than his personal preference.

¶ 29    In *Sjostrom v. Sproule*, 33 Ill. 2d 40 (1965), this court considered a case where the plaintiff was injured in a car accident on the way to work. The court found that the injuries were compensable because "the plaintiff's injuries arose out of and in the course of his employment since his trip to work was 'determined by the demands of his employment rather than personal factors.' " See *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79, 87-88 (1985) (discussing *Sjostrom*). Similar to this case, the plaintiff was riding in a car driven by the plaintiff's coworker. However, unlike the present case, a supervisor directed the plaintiff and the coworker to ride together and the employees were reimbursed for travel costs.

¶ 30    In *Chicago Bridge & Iron*, the appellate court also considered whether Reed's injury arose out of and in the course of employment when he was injured while traveling to work. The court noted that the proper test is whether the "course or method of travel is determined by the demands or exigencies of the job rather than by his own personal preference as to where he chooses to live." *Chicago Bridge & Iron, Inc. v. Industrial Comm'n*, 248 Ill. App. 3d 687, 693 (1993). In that case, however, the court found that Reed, the plaintiff, was not acting in the course of employment because the employer did not direct Reed's route to work, and Reed was free to choose any route in traveling to work. The court also noted that while Reed was reimbursed for travel expenses, he was not paid for time spent traveling. Therefore, the court concluded that Reed was not in the course of employment when the injury occurred.

---

[1]Daugherty argues that Venture's home "employment premises" was in Wilmington, Illinois, while this job location was in Cordova, Illinois. Regardless of whether Venture's home location was in Wilmington, Daugherty was hired solely to perform work at the Cordova job site. Therefore, this is the premises at which Daugherty was employed.

¶ 31     Unlike the plaintiff in *Sjostrom*, Daugherty's course and method of travel was not directed by Venture. While Daugherty's decision to stay at a motel closer to the work site was a logical one, as the work site was 200 miles from his home, it was a personal decision. Nothing in Daugherty's contract required him to travel out of his union's territory to take the position with Venture. Instead, it was Daugherty's personal preference to accept the position and the travel distance that it entailed. The Commission recognized that Venture did not require Daugherty to relocate closer to the job site. While Daugherty testified that it was his understanding that Venture wanted workers to be within an hour's traveling distance from the plant, there was no evidence that this was required or even suggested by Venture. Daugherty's coworker, McGill, testified that Venture did not tell them where to stay and that he was not required to relocate closer to the work site. Also unlike the plaintiff in *Sjostrom*, Daugherty and McGill were not instructed to ride together, but made the personal decision to do so in order to save money.

¶ 32     Daugherty is much more similar to Reed in *Chicago Bridge & Iron*, as Daugherty was free to choose his own route to work. Even more persuasive than in *Chicago Bridge & Iron*, Venture did not reimburse Daugherty for travel costs. Daugherty was simply no different from any other employee who has to drive to work on a daily basis. Therefore, the Commission's finding that Daugherty's method of travel was determined by the demands and exigencies of the job, rather than his personal preference, was against the manifest weight of the evidence.

¶ 33                                    CONCLUSION

¶ 34     While there is no question that Daugherty was seriously injured, the facts of this case do not support Daugherty's argument that he was entitled to workers' compensation benefits. Daugherty made the personal decision to accept a temporary position with Venture at a plant located approximately 200 miles from his home. Venture did not direct Daugherty to accept the position at Cordova, and Daugherty accepted this temporary position with full knowledge of the commute it involved. Daugherty was not a traveling employee.

¶ 35     Additionally, Daugherty's course or method of travel was not determined by the demands and exigencies of the job. Venture did not reimburse Daugherty for travel expenses or time spent traveling. Venture did not direct Daugherty's travel or require him to take a certain route to work. Instead, Daugherty made the personal decision to accept the position at Cordova and the additional travel and travel risks that it entailed.

¶ 36     The appellate court judgment is reversed and the circuit court judgment affirmed.


¶ 37     Appellate court judgment reversed.

¶ 38     Circuit court judgment affirmed.


¶ 39     JUSTICE KILBRIDE, dissenting:

¶ 40     I agree with the appellate court's judgment affirming the Commission's conclusion that Daugherty qualified for workers' compensation benefits because he was a "traveling

employee" at the time of the incident and his injuries arose out of and in the course of his employment. Because the majority reverses that judgment and rejects the Commission's decision, I dissent.

¶ 41    Initially, unlike the majority, I would clearly state that a manifest weight of the evidence standard applies here. See *supra* ¶ 14 (deciding not to resolve the parties' dispute regarding the proper standard of review). A reviewing court is permitted to reverse the Commission's decision only when the award is contrary to law or the Commission's factual findings were against the manifest weight of the evidence. While legal questions are subject to *de novo* review, questions of fact are subject to a manifest weight of the evidence standard. *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). Elaborating on the proper standard of review, this court explained that "if undisputed facts upon any issue permit more than one reasonable inference, the determination of such issues presents a question of fact, and the conclusion of the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 60 (1989).

¶ 42    Here, the parties disagree on whether the employer, Venture, expected or required Daugherty to stay within a certain proximity to the employment site, and the record contains testimony that permits different reasonable inferences on this point, supporting application of the manifest weight of the standard. *Caterpillar Tractor Co.*, 129 Ill. 2d at 60. In addition, the arbitrator and the Commission reached opposite conclusions after reviewing the evidence, demonstrating that reasonable inferences from the evidence could reasonably yield different conclusions. This provides additional justification for application of a manifest weight of the evidence standard. See *Illinois Valley Irrigation, Inc. v. Industrial Comm'n*, 66 Ill. 2d 234, 239 (1977) (applying manifest weight of evidence standard when arbitrator and the Commission reached contrary conclusions).

¶ 43    Thus, I believe a manifest weight of the evidence standard applies in this case. Under this deferential standard, a reviewing court may reverse the Commission's decision only if the record discloses that the opposite conclusion clearly is the proper result. *Beelman Trucking*, 233 Ill. 2d at 370.

¶ 44    An employee is entitled to workers' compensation benefits for an injury only if the injury arises out of and in the course of his employment. 820 ILCS 305/2 (West 2008); *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483 (1989). Generally, an injury incurred by an employee traveling to or from his place of employment is not recoverable because it does not arise out of or in the course of the employment. *Commonwealth Edison Co. v. Industrial Comm'n*, 86 Ill. 2d 534, 537 (1981). The justification for this general rule is that "the employee's trip to and from work is the product of his own decision as to where he wants to live, a matter in which his employer ordinarily has no interest." *Sjostrom v. Sproule*, 33 Ill. 2d 40, 43 (1965).

¶ 45    An exception to this rule applies, however, when the employee is classified as a "traveling employee." This well-established exception applies to employees who are required to travel away from their employer's premises. *Hoffman v. Industrial Comm'n*, 109 Ill. 2d 194, 199 (1985); *Wright v. Industrial Comm'n*, 62 Ill. 2d 65, 68 (1975); *Cox v. Illinois*

*Workers' Compensation Comm'n*, 406 Ill. App. 3d 541, 545 (2010). Nonetheless, as with all employees, a traveling employee's injuries are compensable only if they arise out of and in the course of his employment. *Hoffman*, 109 Ill. 2d at 199.

¶ 46    In relevant part, acts that an employee might be reasonably expected to perform incident to his assigned duties are considered to arise out of and in the course of employment. *Wright*, 62 Ill. 2d at 69. More specifically, in the context of a traveling employee, this court has explained that "[t]he test for determining whether an injury to a traveling employee arose out of and in the course of his employment is the reasonableness of the conduct in which he was engaged and whether it might normally be anticipated or foreseen by the employer." *Wright*, 62 Ill. 2d at 69-70 (citing *David Wexler & Co. v. Industrial Comm'n*, 52 Ill. 2d 506, 510 (1972)). Cognizant of the deferential standard of review and the law governing the "traveling employee" exception, I now detail the evidence considered by the Commission.

¶ 47    At the time of the incident, Daugherty was employed by Venture, a company based in Wilmington, Illinois. Venture contracted with Exelon Generation Company, LLC, to provide skilled tradesmen for maintenance or repair work at power plants owned and operated by Exelon. Typically, Venture filled Exelon openings with local union tradesmen. When positions could not be filled locally, Venture posted the jobs with remote union locations. Thus, when local union tradesmen were unavailable, Venture filled the positions with tradesmen who lived outside the area. Necessarily, these individuals must travel to reach the distant work site.

¶ 48    This is precisely what occurred here. At the time of the incident, Daugherty was a member of Local 137 and a pipefitter with 30 years' experience. Daugherty lived in Springfield, Illinois, over 200 miles away from Exelon's Cordova plant. Between 2004 and 2006, Daugherty worked on multiple occasions for Venture at various Exelon-owned power plants throughout Illinois, including the Cordova plant, the LaSalle plant, and the Clinton plant. Venture hired Daugherty on a temporary basis for each project, and his temporary employment terminated upon completion of each project. Based on this work history, Daugherty had passed the required background check and acquired the specialized skills necessary for that type of work.

¶ 49    In March 2006, Venture was unable to fill a position at the Cordova plant locally and sought remote union workers. Daugherty bid for the job and was selected by Venture for temporary assignment to a position at the Cordova plant. The position required Daugherty to work 12-hour days, seven days a week.

¶ 50    Daugherty testified that Venture required its workers to be "available at just a phone call." Daugherty explained that he needed to stay within a certain distance from the plant because Venture might ask him to work early or to work late. Daugherty further testified that he was required to stay within an hour of the plant to fulfill his job duties, and he chose to stay at a motel approximately 30 miles away from the Cordova plant. Daugherty's coworker, Todd McGill, confirmed that Venture emphasized the benefit of an employee being local or geographically close. In contrast, Venture denied that Daugherty was required to stay within an hour of the plant. Venture, however, conceded that it benefitted from having workers who were willing and able to stay within the geographic location of the employment site.

¶ 51    Ultimately, Daugherty and McGill first worked at the Cordova plant for a 12-hour shift on March 23, 2006. The men stayed overnight at a hotel about 30 miles away from the plant. At around 6 a.m. the next day, the two men were involved in a traffic accident on their way to the Cordova plant, and Daugherty suffered significant injuries.

¶ 52    Reviewing this evidence, I agree with the Commission that Daugherty should be considered a traveling employee at the time he sustained his injuries. There can be no question that Daugherty, who lived over 200 miles away from the Cordova plant work site, had to travel away from his employer's premises in Wilmington, Illinois. Even assuming, as the majority concludes in a footnote with no legal analysis, that Cordova, Illinois, the location of the plant, should be considered his employer's premises (*supra* ¶ 24 n.1), Daugherty would have had to travel to that site because he lived 200 miles away in Springfield.

¶ 53    Moreover, Exelon contracted with Venture with the express purpose to obtain qualified nonlocal tradesmen from *remote* union locations because of the lack of available qualified local union tradesmen. In other words, Exelon and Venture agreed to hire union tradesmen from outside of the area who would necessarily be *required to travel* to the area to work. In fact, as Daugherty's experience reveals, he was required to travel over 200 miles to reach the Cordova plant to complete the job he was hired by Venture to perform. By definition, then, Daugherty was required to travel from his employer's premises and qualifies as a traveling employee. See *Wright*, 62 Ill. 2d at 68 (traveling employee exception applies to employees who are required to travel away from their employer's premises).

¶ 54    Of course, concluding that Daugherty was a traveling employee does not end the requisite inquiry. Daugherty can receive workers' compensation benefits for his injuries only if they arose out of and in the course of his employment. *Hoffman*, 109 Ill. 2d at 199. As this court has explained, a traveling employee's injuries arose out of and in the course of his employment if he was engaged in reasonable conduct at the time of his injury and his employer might normally anticipate or foresee that conduct. *Wright*, 62 Ill. 2d at 69-70. Here, Daugherty was injured as he traveled in a vehicle to the Cordova plant from the motel where he was staying while he completed his temporary work assignment outside of his local area. This conduct was entirely reasonable, and his employer, who hired Daugherty with the express purpose to travel to a remote work site, certainly would have anticipated it. Consequently, in accordance with the test articulated by this court in *Wright*, Daugherty's injuries arose from and in the course of his employment. *Wright*, 62 Ill. 2d at 68.

¶ 55    The appellate court here reached the same conclusion. As the appellate court found, "Venture-Newberg must have anticipated that [Daugherty], recruited to work at Exelon's facility over 200 miles from [his] home, would be required to travel and arrange for convenient lodging in order to perform the duties of his job, and that it was reasonable and foreseeable that he would travel a direct route from the lodge at which he was staying to Exelon's facility." 2012 IL App (4th) 110847WC, ¶ 15.

¶ 56    The majority reverses the appellate court's judgment and rejects the Commission's assessment of the evidence and its related determination that Daugherty was entitled to workers' compensation benefits. *Supra* ¶ 2. Without ever actually stating it, the majority

implicitly holds that an opposite conclusion is clearly evident from the record. *Supra* ¶ 14 (declining to identify the proper standard of review but declaring that Daugherty's argument fails under both a *de novo* standard and the more deferential manifest weight of the evidence standard).

¶ 57      For the foregoing reasons, I cannot agree. Instead, I believe the Commission's conclusion is not contrary to the manifest weight of the evidence, and the appellate court's judgment reaching the same conclusion should be affirmed. Accordingly, I respectfully dissent.