**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 180709WC-U

Order filed

IN THE

**FILED**
November 4, 2019
Carla Bender
4th District Appellate
Court, IL

APPELLATE COURT OF ILLINOIS

FOURTH DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| TRANSPORT AMERICA, | ) | Appeal from the Circuit Court |
| | ) | of the Fifth Judicial Circuit |
| Appellant, | ) | Vermilion County, Illinois |
| | ) | |
| v. | ) | Appeal No. 4-18-0709WC |
| | ) | Circuit No. 17-MR-448 |
| | ) | |
| THE ILLINOIS WORKERS' | ) | Honorable |
| COMPENSATION COMMISSION *et al.* | ) | Derek J. Girton, |
| (Dale Dougherty, Appellee.) | ) | Judge, Presiding. |

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hoffman, Hudson, Barberis, and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The Commission's finding that the claimant failed to prove that he sustained an accidental injury in the course of his employment with the employer was not against the manifest weight of the evidence.

¶ 2     The claimant, Dale Dougherty, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 (West 2010)), seeking benefits for an accidental injury he allegedly sustained while working for the employer, Transport America. After conducting a hearing, an arbitrator found that the claimant failed to prove that he sustained

an accidental injury arising out of and in the course of his employment and denied benefits.

¶ 3    The claimant appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (Commission), which affirmed and adopted the arbitrator's decision. The claimant sought judicial review of the Commission's decision before the circuit court of Vermilion County, which reversed and remanded the Commission's decision, finding that the claimant's injury arose out of and in the course of his employment. On remand, the Commission awarded the claimant benefits. The employer sought review before the circuit court of Vermilion County. The court confirmed the Commission's decision on remand. This appeal followed.

¶ 4                                         FACTS

¶ 5    The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on September 23, 2014, and the Commission's Decision and Opinion on Remand dated September 18, 2017.

¶ 6    The claimant was employed by the employer as an over-the-road truck driver for approximately five and a half years. He drove a truck owned by the employer. The claimant testified that he would begin his trip on Sunday or Monday and would return home on Friday or Saturday. His route began and ended in Danville, where he resided, and he drove throughout all the states east of the Mississippi. In addition to driving the truck, the claimant was responsible for loading and unloading the truck when he reached his destination. When the claimant returned after his week of work, he parked the truck on a dead-end street about three miles from his home. After he parked the truck, his wife would pick him up. The claimant stated that the employer was aware of where he parked his truck when he was off duty. While on the road, he would take clothes, food, a blanket, and sheets with him. The claimant stated that his schedule was determined by the load he was carrying and dispatch. He would typically complete five loads per

week and was compensated by the mile.

¶ 7     The claimant testified, that he was responsible for completing paperwork, such as logbooks and trip sheets. He stated that the trip sheets were to be completed at the end of every trip when the load was delivered. Despite the employer's policy, the claimant stated he usually completed all his trip sheets at the end of the week. He further testified that the employer required the trip sheets to be turned in by midnight on Saturday night or else he would not get paid. He turned in his trip sheets at the closest Pilot Truck Stop because it had a fax machine.

¶ 8     The claimant testified, that on Friday, April 16, 2010, he returned home to Danville between 5:00 p.m. and 6:00 p.m. and parked the truck at his usual spot on the dead-end street. When he arrived, his wife was waiting for him. The claimant testified that he exited the truck, completed his vehicle inspection, and got in the car wife his wife. His work schedule indicated his next workday would be the following Monday. Upon leaving with his wife, they went to dinner and then went shopping to look around and stretch his legs. After the shopping trip, but before returning home, the claimant returned to his truck at about 9:00 p.m. to retrieve his personal belongings and fill out his trip sheets. He stated that he completed trip sheets for three trips that were completed earlier in the week, not for the load he was currently hauling when he arrived home, as he was in the middle of a trip. It took him approximately 30 to 40 minutes to complete his paperwork and his wife waited in the car. We note that the claimant testified that he did not tell his employer or the employer's insurance carrier that he returned to his truck to complete the trip sheets because he did not think it was important. Instead, he only reported that he returned to the truck to retrieve his personal belongings.

¶ 9     The claimant then testified, that once he finished his trip sheets, he gathered his clothes and a souvenir coffee cup. As he exited the truck, his foot slipped off the step and he lost his

balance and fell. The claimant testified that he attempted to hold on to the truck with his right hand to prevent himself from falling but was unsuccessful and landed on his left hip and left elbow. Upon falling, he immediately felt pain in his ribs and left shoulder and was unable to move his left arm. He heard something rip and snap in his left shoulder. The claimant stated he was unable to stand up at first, but after 20 minutes, he was able to stand. His wife took him to the emergency room at Provena Covenant Medical Center.

¶ 10     The claimant testified that he was diagnosed with contusions to the left shoulder and elbow. X-rays taken of his shoulder showed no fractures or other abnormalities. About three months after the accident, the claimant presented to Dr. James Hensold at Christie Clinic reporting pain in his left shoulder and problems raising his left arm. He reported a history of arthritis and noted he was taking Mobic, Ibuprofen, and Tylenol regularly. The claimant was diagnosed with arthralgia. On July 30, 2010, an MRI revealed a full thickness rotator cuff tear, partial tears of the infraspinatus and subscapularis tendons, and a partial subluxation of the biceps tendon. Based on these results, the claimant was referred for an orthopedic surgical evaluation with Dr. Edward Kolb at Orthopedics of Illinois. On September 20, 2010, Dr. Kolb recommended left shoulder arthroscopy with rotator cuff repair. On September 30, 2010, the claimant had such surgery. The postoperative findings included a left shoulder rotator cuff repair, left shoulder SLAP tear, impingement syndrome, and anterior labral tearing. Dr. Kolb referred the claimant to physical therapy. After completing physical therapy, Dr. Kolb released the claimant for work effective February 14, 2011. However, due to the claimant's reports of discomfort with overhead activities, he was referred for a functional capacity evaluation.

¶ 11     On June 30, 2011, a functional capacity evaluation was completed. Dr. Kolb released the claimant for maximum medical improvement on July 22, 2011, with lifting restrictions.

However, Dr. Kolb noted that the claimant would likely be able to drive a truck. Dr. Kolb testified by evidence deposition and opined that the claimant's accident on April 16, 2010, was the cause of his left shoulder condition that he began treating on September 20, 2010. The claimant testified that he had not worked for the employer since September 30, 2010, the date of his surgery. The employer terminated the claimant upon expiration of his leave under the Family and Medical Leave Act of 1993 (see 29 U.S.C. § 2601 *et seq.* (2010)). At the time of the claimant's testimony, he was employed by a different trucking company.

¶ 12    The claimant testified that he did not immediately report this accident to his employer because he was concerned about reporting a work injury because he already had a couple of prior workers' compensation cases. Thus, he advised the emergency room to bill his group health insurance carrier. The claimant eventually notified the employer of this accident but could not recall the exact date. He testified that he notified the employer after he received a letter from his health insurance carrier on June 7, 2010, denying payment of his medical bills. The claimant filed his application for adjustment of claim on September 20, 2010.

¶ 13    Catherine Axtell, the Safety and Health Administrator for the employer, testified that she handled work injuries for the employer. She testified that the employer had a policy that all work injuries were to be reported to a supervisor immediately and that this policy was communicated to all employees during orientation and in the driver's manual. Axtell also testified that she is generally the second point of contact when an accident occurs and that the employee's direct supervisor is typically the first point of contact. She is responsible for conveying a reported work injury to the employer's workers' compensation insurance carrier, Zurich North America Claims.

¶ 14    In June 2010, Axtell was advised via a chain of emails that the claimant called asking for assistance in responding to a letter from his health insurance carrier denying his medical bills

relating to an accident he sustained on April 16, 2010. Axtell testified this was the first notice the employer received in relation to the claimant's accident on April 16, 2010. In response to the claimant's email, Axtell called the claimant. Axtell testified that the claimant reported, that on April 16, 2010, he completed some errands with his wife while off duty but returned to his truck to retrieve his laundry and coffee cup when he fell and injured his left shoulder. Based on this report, she completed a First Report of Injury on July 15, 2015, to submit to Zurich North America Claims. Axtell testified, that at no time did the claimant report to her that he returned to his truck to complete his trip sheets. She also confirmed that the employer's policy required all trip sheets to be completed by drivers at the end of each load.

¶ 15        Paula Smith, a Claims Specialist for Zurich North America Claims, testified that she received the July 15, 2010, report completed by Axtell. She testified that she was assigned to a dedicated account for the claimant. Upon receiving the report, Smith contacted the claimant for a recorded statement. The recorded statement was taken on July 19, 2010, and was subsequently transcribed. Smith testified that she was familiar with the claimant as she handled his prior claims. She also stated that the claimant did not report that he returned to his truck to complete his trip sheets, but rather only to retrieve his coffee mug and laundry.

¶ 16        On November 3, 2014, the arbitrator concluded that the claimant did not sustain an accidental injury arising out of and in the course of his employment with the employer on April 16, 2010. The arbitrator made the following findings: (1) that the claimant's act of returning to his truck to retrieve his personal belongings did not arise out of his employment with the employer, (2) he already completed his route and was no longer on duty when he returned to his truck, (3) his testimony that he also returned to the truck to complete his trip sheets was not credible, (4) he did not report to either Axtell or Smith that he returned to his truck to complete

- 6 -

his trip sheets, and (5) his wife did not testify at trial to corroborate his testimony that she waited for him for about 30 to 40 minutes while he completed his trip sheets. The claimant filed a Petition for Review before the Commission. On July 16, 2015, the Commission affirmed and adopted the arbitrator's decision. The claimant then sought review before the circuit court of Vermilion County.

¶ 17     On June 6, 2016, the circuit court, stating it conducted *de novo* review, found that the claimant's injury arose out of and in the course of his employment with the employer because it was reasonable and foreseeable that he would return to the company-owned truck to gather his personal belongings for the weekend. The court reversed the Commission's decision on the issue of accident and remanded the case back to the Commission for further proceedings consistent with that ruling. On October 11, 2017, the Commission found that (1) the claimant sustained an accidental injury arising out of and in the course of his employment with the employer; (2) his condition of ill-being was causally related to that accident; (3) he was temporarily totally disabled from September 30, 2010, through February 14, 2011, for a period of 19-5/7 weeks; (4) he was entitled to reasonable and necessary medical expenses relating to the accident and relative to the left shoulder; and (5) he suffered a permanent loss of use of 20% person-as-a-whole. A dissenting Commissioner stated that the circuit court's reversal was erroneous as the manifest-weight standard applied and the issue involved a credibility issue. The employer sought review of the Commission's decision before the circuit court of Vermilion County. On October 26, 2018, the circuit court confirmed the Commission's decision.

¶ 18     The employer appeals.

¶ 19                                    ANALYSIS

¶ 20     On appeal, the employer argues that the Commission's first decision, finding that the

claimant's accident did not arise out of and in the course of his employment, was correct and that the circuit court erred when it reversed that decision and remanded for further proceedings. Consequently, the employer also argues that the circuit court's order confirming the Commission's decision on remand was erroneous.

¶ 21 Generally, an employee injured while going to or returning from his place of employment has not sustained an injury that arose out of or in the course of the employment. *Commonwealth Edison Co. v. Industrial Comm'n*, 86 Ill. 2d 534, 537 (1981). In explaining the purpose of this rule, our supreme court stated that "the employee's trip to and from work is the product of his own decision as to where he wants to live, a matter in which his employer ordinarily has no interest." *Sjostrom v. Sproule,* 33 Ill. 2d 40, 43 (1965). An exception to this rule applies when an employee qualifies as a "traveling employee."

¶ 22 A traveling employee, just like a non-traveling employee, is required to prove that his accidental injury arose out of and in the course of his employment with the employer. However, the rules for traveling employees differ from non-traveling employees to accommodate the traveling nature of their employment. Accordingly, a traveling employee is considered to be "in the course of" his employment from the time he leaves his home until he returns. *Pryor v. Illinois Workers' Compensation Comm'n*, 2015 IL App (2d) 130874WC, ¶ 20. An injury sustained by a traveling employee "arises out of" his employment if he is injured while engaging in conduct that was reasonable and foreseeable. *Id.*

¶ 23 I. "Traveling Employee"

¶ 24 First, we address whether the claimant was a "traveling employee." "A 'traveling employee' is one whose work duties require him to travel away from his employer's premises." *Id.* The work-related travel "must be more than a regular commute from the employee's home to

the employer's premises." (Internal quotation marks omitted.) *United Airlines, Inc. v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 151693WC, ¶ 21. Here, the claimant testified that he was employed as an over-the-road truck driver for the employer for approximately five and a half year and stated that he would begin his trip on Sunday or Monday and would return home on Friday or Saturday. His route began and ended in Danville and he drove throughout all the states east of the Mississippi. Therefore, it is evident that the claimant was a traveling employee as his work required him to travel away from his employer's premises. Thus, we agree with the decisions below that the claimant qualified as a traveling employee.

¶ 25                                    II. "In the Course Of"

¶ 26         Next, we address whether the claimant was "in the course of" his employment when the accidental injury occurred because we find that it is dispositive. We reiterate that a traveling employee is deemed to be in the course of his employment from the time that he leaves home *until he returns*. *Pryor*, 2015 IL App (2d) 130874WC, ¶ 20. The employer argues the claimant "returned" when he parked his truck, completed his vehicle inspection, and then proceeded to go out to dinner with his wife and shop for three or four hours. Thus, the employer argues that the claimant was not in the course of his employment when the accidental injury occurred. The claimant argues he was in the process of his return when he was injured as he exited his truck, and therefore, his accident occurred in the course of his employment.

¶ 27         Conflicting evidence was presented as to the reason the claimant returned to his truck three to four hours after he parked, completed his vehicle inspection, then went to dinner and shopped with his wife. Thus, it is clear that a dispute of facts and inferences was presented to the Commission, rendering the circuit court's *de novo* review in this case erroneous. The Commission's decision on questions of fact is reviewed under the manifest-weight standard.

*Venture-Newberg v. Illinois' Workers Compensation Comm'n*, 2013 IL 115728, ¶ 14. A decision is against the manifest weight of the evidence only if the record discloses that the opposite conclusion clearly is the proper result. *Id.*

¶ 28 Here, the claimant's own testimony established that he was not in the course of his employment when the accident occurred. At the time of the accident, he returned to his truck to obtain his personal belongings. He was not scheduled for his next shift until Monday. Although there was disputing evidence as to why the claimant returned to his truck after three or four hours, the Commission found the claimant's claim that he returned to his truck to complete his trip sheets to not be credible. It was the Commission's function to judge the credibility of the witnesses and resolve the conflicting evidence. *Potenzo v. Illinois Workers' Compensation Comm'n*, 378 Ill. App. 3d 113, 118 (2007). Regardless, even if the claimant returned to the truck after three or four hours to fill out the trip sheets, the employer's policy required him to fill out those trip sheets after he delivered each load—not when he arrived at his parking spot for the weekend. Here, the evidence showed that he was carrying a load at the time of the accident and the trip sheets for the prior trips that week should have already been completed per the employer's policy, the claimant's own testimony, and Axtell's testimony. Thus, at the time the claimant exited his truck and completed his vehicle inspection, he returned and was no longer in the course of his employment.

¶ 29 We also note that the parties raised certain arguments pertaining to whether the claimant's three- or four-hour outing with his wife constituted a personal deviation. See *Cox v. Illinois Workers' Compensation Comm'n*, 406 Ill. App. 3d 541, 544 (2010). However, because we found that the claimant "returned" when he parked and completed his truck inspection and did not resume work after that time, we need not answer that question. Additionally, since we

have decided that the claimant was not engaged in the course of his employment with the employer when the accidental injury occurred, we also need not address whether his act of returning to his truck to retrieve his personal belongings arose out of his employment.

¶ 30                                                    CONCLUSION

¶ 31        We reverse the judgment of the circuit court of Vermilion County, which confirmed the Commission's decision on remand. We then vacate the Commission's decision on remand and reverse the circuit court's order remanding. Finally, we reinstate the Commission's original decision dated July 16, 2015.